Submitted on briefs September 2, reversed September 15, 1914.

## WICKS *v.* SANBORN.

(143 Pac. 1007.)

**Judgment—Res Judicata—Directed Verdict.**

1. Under Section 182, L. O. L., authorizing a judgment of nonsuit when the plaintiff fails to prove a cause sufficient to be submitted to the jury, and Section 184, providing that an action is dismissed when a nonsuit is given, but the judgment does not bar another action, a directed verdict will estop plaintiff from maintaining another action for the same cause, though a nonsuit does not necessarily have that effect.

> [As to when compulsory nonsuit should be granted, see note in 24 Am. Dec. 620.]

**Trial—Direction of Verdict.**

2. Under Article VII, Section 3, of the Constitution, guaranteeing the right of trial by jury, and Section 157, L. O. L., providing that trial by jury may be waived by failure to appear, by written consent, or by oral consent in open court entered on the minutes, a motion for directed verdict is not allowable at the close of plaintiff's case, unless defendant rests his case and waives the right to introduce further evidence; there being no presumption from the silence of defendant that he waives the right of trial by jury.

**Appeal and Error—Review—Amendment Regarded as Made.**

3. Under Article VII, Section 3, of the Constitution, providing that if the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered, where a directed verdict was

72 Or.—21

granted against plaintiff at the close of his evidence without waiver by defendant of his right to a jury trial, the Supreme Court will treat the motion for directed verdict as an application for nonsuit.

[As to right of court to direct verdict in favor of one codefendant at close of plaintiff's case, see note in Ann. Cas. 1912D, 1061.]

**Principal and Agent—Question for Jury.**

4. In an action for the value of services in preparing plans and specifications for a dwelling-house, evidence *held* to present a question for the jury whether a contractor was authorized by defendant to contract with plaintiff for the services.

From Clatsop: JAMES A. EAKIN, Judge.

Statement by MR. JUSTICE MOORE.

This is an action to recover money. The complaint states in effect that the plaintiff, John E. Wicks, is an architect, who, on December 1, 1911, at the special instance and request of the defendant, Frank H. Sanborn, prepared for him plans and specifications for a proposed dwelling-house, which sketch and detailed statement were delivered to him; that the reasonable value of the work and services so performed and rendered is $90; that though demand had been made upon defendant for that sum, he had neglected and refused to pay any part thereof, whereupon judgment was demanded therefor.

The answer denies the material averments of the complaint, except that it is admitted that in the year 1911 the plaintiff submitted to the defendant for inspection and approval a plan for a dwelling-house, but such drawing was not assented to by him, and pursuant to his agreement with the plaintiff he was not to pay anything for the plan unless he accepted it and built a house in accordance therewith. For a further defense it is alleged, in substance, that in November, 1911, the defendant contemplated the construction of a dwelling the cost of which, when fully completed, should not exceed $3,500, and thereupon by Charles L.

Houston, a contractor, the plaintiff suggested to the defendant that he would prepare plans for a house, which sketch if accepted by him and the cost of the building in accordance therewith would not exceed $3,500, or if the defendant used or employed the plan in the construction of a building, he would pay the plaintiff for the sketch $90, but if the design were not thus approved, and the defendant did not build the house in accordance therewith or use or employ the drawing for such purposes, he was to pay nothing to the plaintiff for his services; that pursuant to such agreement the plaintiff, on December ——, 1911, submitted to the defendant a sketch of a dwelling, which if completed in accordance therewith could not have cost less than $7,000; that the plan did not meet the approval of the defendant, who rejected it, and did not construct any building in accordance therewith or at all, or use or employ the drawing for any purpose, and so informed the plaintiff; that by the terms of the agreement he was, under such circumstances, to receive nothing for the plan; and that the contract alluded to in the complaint is the same agreement referred to herein. The prayer of the answer is that the action be dismissed.

The averments of new matter in the answer were put in issue by the reply and the cause coming on for trial the plaintiff introduced his testimony in chief and rested, whereupon the defendant's counsel, without expressly waiving his right to offer any evidence, moved the court for a directed verdict in favor of his client, on the grounds that the testimony received was insufficient to authorize a submission of the cause to the jury, and that plaintiff had not established a right of action against the defendant. The motion was allowed, the

jury so instructed, and, judgment having been rendered on the verdict, the plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. A. W. Norblad* and *Mr. J. T. Jeffries.*

For respondent there was a brief over the name of *Mr. George C. Fulton.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is maintained that if the testimony given by the plaintiff did not substantiate a cause sufficient to be submitted to the jury, the proper procedure under the facts hereinbefore outlined was a judgment of nonsuit; and, this being so, an error was committed in directing the jury to return a verdict for the defendant, to which action of the court an exception was taken. A judgment of nonsuit may be rendered on motion of the defendant, when upon the trial the plaintiff fails to prove a cause sufficient to be submitted to the jury: Section 182, L. O. L. An action is dismissed when a nonsuit is given, but such judgment does not have the effect to bar another action for the same cause: Section 184, L. O. L. From these provisions of the statute, regulating procedure, it will be seen that a directed verdict against the plaintiff will estop him from maintaining another action for the same cause. A judgment of nonsuit, however, does not necessarily have that effect upon him: *Huber* v. *Miller,* 41 Or. 103 (68 Pac. 400).

2. In *Brown* v. *Lewis,* 50 Or. 358, 363 (92 Pac. 1058, 1060), Mr. Justice EAKIN, discussing the question now under consideration, says:

"At the close of the plaintiff's testimony, defendant asked the court to instruct the jury to return a verdict for defendant, but no such proceeding is allowable under our statute unless defendant also rested his case. A motion for nonsuit is the only proceeding open to the defendant at the close of the plaintiff's case for insufficiency of the evidence."

The decision in that case is based on a clause of the organic act guaranteeing the right of trial by jury in all civil actions (Article VII, Section 3, of the Constitution), and predicated on the rule that such privilege can be waived by the parties by oral consent in open court, and such acquiescence is entered in the minutes: Section 157, L. O. L. The conclusion thus reached is in harmony with the doctrine announced by a text-writer, who says:

"A motion to direct a verdict may be made either at the close of the case of the party having the affirmative of the issue, or thereafter when all the evidence is in: 6 Ency. Pl. & Pr. 698.

In a note to this excerpt it is remarked:

"But unless the defendant announces that he will rest on the plaintiff's showing, he is not in a position to ask for the direction of a verdict at the close of the plaintiff's case."

In support of such observations decisions from the Supreme Courts of Massachusetts and Michigan are cited.

In the case at bar it is argued by defendant's counsel that, since the record herein is silent as to the matter, it must be presumed that the right to a trial by jury was waived by his client when the motion for a directed verdict in his favor was made. The deduction invoked, which the law expressly directs to be made from particular facts, ought not to be indulged,

because the implied waiver of the defendant's privilege of trial by jury is insufficient, since the relinquishment of a known right, to be an estoppel, must have been express and entered in the minutes (Section 157, L. O. L.), and because the practice prevailing in the Circuit Courts of this state, as evidenced by transcripts filed in this court, permits the defendant to offer testimony of his theory of the issues of fact involved when a motion for a directed verdict in his favor has been denied, after the plaintiff has introduced his testimony in chief and rested.

3. The defendant herein not having expressly waived his right to a jury trial nor caused to be entered in the minutes a memorandum of relinquishment of that privilege, the motion for a directed verdict will be treated, under the provisions of the fundamental law of this state, as an application for a judgment of nonsuit: Article VII, Section 3 of the Constitution.

4. Examining in this manner the testimony given by the plaintiff, the question to be considered is whether the contractor, Charles L. Houston, was the agent of the defendant and authorized to enter into contracts in his behalf, when he made an agreement with the plaintiff to draw a plan for a house. Wicks stated upon oath that in October, 1911, Houston exhibited to him a sketch for a residence for Sanborn, and inquired what the plan of such a house would cost, telling the witness that the building was to be erected by day's labor, or by a percentage basis, and no specifications of the dwelling or superintendence of construction would be required. Wicks, having made an estimate of the service required, stated that the plan would cost $90 or $95. Houston asked if the drawings could be made for $90, whereupon the witness replied that he would do the work for that sum. The con-

tractor left his sketch with the plaintiff, and returning in a few days informed him that the price was satisfactory to the defendant, saying that "Mr. Sanborn would like to have this house for $3,500, but I know it can't be done." Houston further inquired of the plaintiff if he would make preliminary drawings and submit them to Mr. Sanborn, which the witness promised to do. Having complied with the request, the plaintiff delivered the sketches to Houston, and in a few days Wicks was invited to Sanborn's residence, where the plans had been left, and some changes therein were suggested. At that interview the defendant stated to the witness: "This house will exceed the amount I want to spend." Wicks replied: "Yes, it will exceed what Mr. Houston mentioned, that is, $3,500.

"Q. What was said about Mr. Houston acting for Mr. Sanborn?

"A. Well, the only thing that was said about Mr. Houston was that he was going to build the house for Mr. Sanborn, and that he had procured these plans * * for Mr. Sanborn.

"Q. Did Mr. Sanborn say anything to the effect that he had authorized or procured Mr. Houston to get these plans for him; that he was acting as his agent?

"A. Of course, I left off where Mr. Sanborn made the statement that Mr. Houston was going to build that house by day's work and had obtained those plans from me for Mr. Sanborn."

Obeying the direction of the court, "You may state all the conversation you had with Mr. Sanborn at that time," the witness said: "Well, after that, of course, we had gone through the whole proceedings with the plans, step by step, and of course, it was time to depart, and I, before I left the house—of course I didn't take the plans with me—they was going to be taken

into further consideration, but he was going to let me know through Mr. Houston when I was to furnish those plans. In a few days afterward, why Mr. Houston brought in some preliminary sketches and said: 'Go ahead with the plans. That is the order.'"

The witness further testified that he completed the plans and delivered them to Mr. Houston, but had never been paid anything therefor. That two years after the services were performed Wicks stated upon oath that he called upon Sanborn and asked him to pay the sum now demanded, whereupon the defendant replied: "'That is a nice time to come to ask payment for work done nearly two years ago.' 'Well,' I said, 'you know I have been out of town, and between men it should make no difference whether it is two years or more.'"

The witness further stated that on December 2, 1913, he mailed the defendant an ordinary bill, and thereafter received a letter which reads:

"Dec. 5th, 1913.

"Mr. J. E. Wicks, City—

"Dear Sir: In acknowledgment of your invoice of Dec. 2d, 1913, I wish to reiterate my verbal statement to you recently that I do not consider this invoice as a legitimate charge against me.

"You will recollect that arrangements for plans which you drew were made with you through Mr. C. E. Houston, and it is my distinct recollection of these arrangements, as stated to me at the time by Mr. Houston, that I was to pay you $90.00 for drawing the plans, in the event that I should decide to use them. Otherwise, the plans were gratis, as submitted for my approval.

"I have conferred with Mr. Houston and he has stated to me that this is also his recollection of the transaction and this agreement is most certainly attested to by the fact that your invoice dated Dec. 2d,

1913, is the first that has ever been submitted to me by you and the first intimation I had received from you that you contemplated such a charge was your recent verbal statement. This in view of the fact that plans were drawn early in the summer of 1911 or over two years ago.

"You will no doubt recollect that I gave up my intention to build through the fact that upon obtaining figures and the cost of the house contemplated, I found that the same would be in excess of $7,000.00 which was considerable in excess of the amount I desired to put into a residence at that time.

"Yours very truly,
"F. H. SANBORN.

"FHS　RBS
"C/o Mr. C. E. HOUSTON."

In answer to the question by his counsel: "What would be the reasonable cost of building that house in the City of Astoria under the plans that you drew and submitted to Mr. Houston for Mr. Sanborn?" Wicks replied: "I would not state a figure for day's work or percentage, but if the house was built by contract, it would be between $5,000 and $6,000. On redirect examination the witness was asked by his counsel: "Was anything ever said either between you or Mr. Sanborn, or you or Mr. Houston, acting for Mr. Sanborn, to the effect that if the house wasn't built, or that if the house cost over a certain amount, that you would not receive any pay?" Wicks answered, "Not a word."

The foregoing is deemed to be a sufficient statement of the plaintiff's material testimony, which for the purpose of a motion for a judgment of nonsuit must be regarded as true, together with all the legal presumptions based thereon and reasonable inferences deducible therefrom. An examination of the testimony relating to the entire transaction referred to in-

duces the conclusion that it is fairly to be inferred that Houston was authorized by the defendant to negotiate. with the plaintiff for the drawing of plans for a dwelling, and that such a case was made out by the testimony received as to authorize a submission of the cause to the jury, thereby imposing upon the defendant the obligation to rebut such inference by introducing testimony tending to show that no such agency was ever created or authority bestowed.

Such being the case an error was committed in granting a nonsuit, in consequence of which the judgment is reversed, and the cause remanded for a new trial. REVERSED.