Argued July 18, affirmed August 1, 1916.

## WICKS *v.* SANBORN.

(159 Pac. 71.)

**Appeal and Error—Law of Case—Motion for Directed Verdict.**

1. Where the evidence contained in the record on a second appeal is not materially different from that produced on the first trial, the decision on the first appeal, on motion for directed verdict, that the plaintiff was entitled to have the jury pass on the evidence, is the law of the case on the second appeal.

**Trial—Action on Contract—Instruction—Application to Evidence.**

2. In an action by an architect for the price of house plans, an instruction that, if the jury should find that the contract between plaintiff and defendant was that if defendant did not build he was not required to pay for the plans, verdict must be for him, even though he agreed or promised to build, and yet did not do so, and that such promise, if made, did not change the contract, was properly modified by adding, "unless you should find from the evidence that it was the intention of the parties to so change the contract," where there was evidence that a change had been agreed upon.

**Trial—Instructions—Province of Jury—Law Question.**

3. In an action by an architect for the price of house plans ordered by a contractor acting for the owner, where the court instructed that, if the contractor was used as the medium through whom the contract was made, then both parties to the action would be bound by the terms of the contract, provided the contractor correctly represented them to the respective parties, the quoted language of the instruction, that if the jury should find from the preponderance of the evidence that the contractor was not the agent of the owner "to the extent of having power to bind him," unless he should have fully and honestly represented to the owner the full terms of the contract and then have the owner ratify them, was not improper, as permitting the jury to decide what the agent might do by virtue of his authority, a·question of law for the court.

From Clatsop: JAMES A. EAKIN, Judge.

Department 2.   Statement by Mr. Justice Harris.

This is the second appeal of a dispute involving $90: See 72 Or. 321 (143 Pac. 1007).   The plaintiff, John E. Wicks, alleges that he is an architect, that at the request of defendant, Frank H. Sanborn, he drew a set of plans reasonably worth $90 for a dwelling-house, and that the defendant has refused to pay for the plans.

The answer avers that the defendant contemplated the erection of a dwelling-house, that the plaintiff agreed that he would prepare a set of plans with the understanding that the defendant would pay $90 if he approved the plans and if he built the house, but no charge was to be made for drawing the plans if the defendant did not approve them or if he did not build.

The reply traverses the averments of the answer. The verdict of the jury was for the plaintiff, and the defendant appealed from the consequent judgment.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. George C. Fulton.*

For respondent there was a brief over the names of *Mr. Frank C. Hesse* and *Mr. A. W. Norblad,* with an oral argument by *Mr. Hesse.*

Mr. Justice Harris delivered the opinion of the court.

The assignments of error question the refusal of the court to direct a verdict for the defendant, and also complain of the giving and refusal to give other instructions.   The negotiations for the plans were for the most part conducted by plaintiff and C. L. Houston, a contractor.   The controversy between the liti-

gants largely results from their variant claims concerning the authority of Houston. Wicks argues that Houston had sufficient authority to make the agreement relied upon by the plaintiff, while Sanborn contends that Houston lacked the requisite authority. A brief reference to the evidence is necessary.

The plaintiff testified that Houston "told me that Mr. Frank Sanborn had asked him to inquire from me what the cost would be for making a plan for a house that Mr. Frank Sanborn intended to build. He had with him a piece of paper, * * and that paper was laid down, * * representing the floor plan of the house. * * I told him the price would be about $90 or $95; so he said he was going to take it up with Mr. Sanborn and let me know a few days afterward." The plaintiff also testified that Houston returned in a few days, and said that $90 was satisfactory to the defendant, and "to go ahead and make up preliminary drawings to be submitted to Mr. Frank H. Sanborn for his approval." Preliminary drawings were then made and turned over to Houston, who "said he was going to take it up with Mr. Sanborn." A few days afterward, at the request of the defendant's wife, Wicks went to Sanborn's home, and there discussed with the defendant and his wife the preliminary drawings, which had been turned over to Houston and by him delivered to Sanborn. According to the testimony of the plaintiff, Sanborn was satisfied with the plans, after some changes pursuant to "suggestions made back and forth," and then "Mr. Sanborn told me that he was going to take the matter under consideration, when he had gone over the preliminary drawings, and would let me know through Mr. Houston in a few days," and "in a few days afterward Mr. Houston came into my office with the same preliminary

drawings that we had discussed at Mr. Sanborn's house, and said that the arrangement was satisfactory, to go ahead with the plans." The plaintiff then completed the plans and "turned them over to Mr. Houston when finished," as "Sanborn said that Mr. Houston was to build the house by day's work and that he procured these plans for him."

C. L. Houston, when a witness for the defendant told the jury that after the preliminary plans had been submitted to Sanborn "he said 'go ahead, I am going to build the house,'" and "to have the plans completed then"; and the witness then told Wicks that Sanborn had said "that he was going to complete the house." Wicks subsequently finished the plans and delivered them to Houston.

1. On the first appeal it was held that the plaintiff was entitled to have the jury pass upon the evidence and that the trial court erred in directing a verdict for the defendant: *Wicks* v. *Sanborn*, 72 Or. 321, 324 (143 Pac. 1007). And since the evidence contained in the record now presented to us is almost identical with and is not materially different from the evidence produced at the first trial, the decision in *Wicks* v. *Sanborn, supra,* on the motion for a directed verdict, becomes the law of the case on this appeal: *Baines* v. *Coos Bay Navigation Co.,* 49 Or. 192, 195 (89 Pac. 371). The motion for a directed verdict was properly denied.

2. At the request of the defendant the court instructed the jury:

"If you should find from a preponderance of the evidence that the contract between plaintiff and defendant was that if the defendant did not build the house in question, that defendant was not required to pay for the plans in question, your verdict must be for the defendant, even though you should further find

81 Or.—24

that defendant agreed to or promised to build a house, yet did not do so. Such promise, if made, would not change the contract.''

And Sanborn now complains because the court modified the instruction by adding:

''Unless you should find from the evidence that it was the intention of the parties to so change the contract.''

The contention is that there was no evidence to justify the modification. We cannot agree with the defendant in his claim that the testimony of Houston that Sanborn told him he intended to build was the only evidence that could be considered in determining whether a change had been agreed upon. The discussion of the preliminary plans at the Sanborn home, and the statement by Sanborn that he would ''take the matter under consideration,'' and then let Wicks ''know through Mr. Houston in a few days,'' are by no means negligible in the consideration of the controversy, and cannot be ignored, especially when taken in connection with what Houston says Sanborn told him and what he in turn repeated to Wicks.

3. Objection is made by the defendant because the court used the words ''to the extent of having power to bind him,'' on the theory that the quoted words had the effect of permitting the jury to decide what an agent may do by virtue of his authority, which is a question of law for the court. The language complained of was used when the court said:

''But I instruct you that if you find, from the preponderance of the evidence, that the said C. L. Houston was not the agent of the defendant in this case to the extent of having power to bind him, unless he should have fully and honestly represented to the defendant the full terms thereof, and then have defendant ratify them, then I instruct you''

—in substance that the defendant would not be liable on an assumed state of facts. The court had previously told the jury that, if Houston was used as—

"the medium through whom the contract was made, then both parties to this action would be bound by these terms, whatever you may find them to be, provided you find that he correctly represented them to the respective parties."

The language excepted to may appear awkward, but it did not have the effect urged by defendant, when read in the light of the whole charge, and particularly when viewed in connection with what immediately preceded it and with what followed it.

Instruction No. 6 does not attempt to leave to the jury the decision of a question of law. The court presented the theory of each litigant to the jury in a charge which on the whole has the merit of being concise and complete, and at the same time understandable, and it was not error to refuse to give the instructions numbered 3 and 4 requested by the defendant.

The jury found for plaintiff after a fair trial, and the judgment is therefore affirmed.          AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE BURNETT concur.