Argued May 25; reversed June 20, 1933

## GERBER *v.* MULTNOMAH COUNTY
### (22 P. (2d) 1103)

*Charles S. Cohn,* Deputy District Attorney, of Portland (Lotus L. Langley, District Attorney, of Portland, on the brief), for appellant.

*Glen R. Metsker,* of St. Helens, for respondent.

BAILEY, J. On May 29, 1931, plaintiff, while crossing what is known as the Burlington bridge from the mainland to Sauvies island, in his automobile, ran into a plank which protruded some four or five inches above the surface of the bridge, causing the automobile to crash through the bridge railing and drop to the ground below, which resulted in injuries to plaintiff and damage to his automobile.

At the close of plaintiffs testimony the defendant, without resting its case, made a motion for involuntary nonsuit (referred to by defendant as a motion for a directed verdict), which was denied by the court. The reasons assigned by defendants in its motion for granting a nonsuit were (1) that the plaintiff failed to prove that he had no knowledge of the defects in the bridge, and (2) that plaintiff's own testimony showed that he was guilty of contributory negligence.

The denial of the foregoing motion and the failure of the court on its own initiative to instruct the jury that plaintiff was guilty of contributory negligence and therefore could not recover are assigned as error.

The condition of the bridge and the manner in which the accident occurred are described in plaintiff's brief as follows:

"The evidence in this case establishes that the bridge in question extended about one-third of a mile in length from the lower Columbia river highway at Burlington to the ferry landing on Multnomah channel; that it was about 15 feet in width and about 20 or 30 feet in height; that it was a wooden bridge constructed many years prior to the accident which happened on May 29, 1931; that on and for a long time prior to this date the cross-planking 3" x 12" was old and rotten; that in the year 1928 a longitudinal surface had been laid on this bridge, consisting of 4" x 12" planks, nine in number, making a driveway nine feet in the center of the bridge, leaving a space on either side about three feet in width; a light hand railing was constructed on each edge of the bridge on the cross-planking.

"The cross-planks were so rotten that they would not hold the spikes on account of which certain of the longitudinal planks were warped, loose and turned up at the ends; it was necessary to turn them over and re-nail them frequently; the surface planking for a month or six weeks prior to the accident was in this

condition. This, for a month or six weeks prior to the accident, was a topic of general comment and conversation in the vicinity. * * *

"The plaintiff prior to the accident had lived on Sauvies island, several miles from the bridge, for a period of one year and a few days. * * * He was practically a stranger in the community and unfamiliar with the bridge. He had traveled over it but twice during that year prior to the accident.

"On the day in question he drove upon the bridge traveling in second gear proceeding about 12 or 15 miles per hour. He had proceeded about 1,000 or 1,200 feet on the bridge when he noticed the particular plank in question sticking up at the end about 30 feet in front of him. He applied his brakes and swung to the right to avoid the plank but it caught his front wheel and jerked the steering wheel out of his hands. His automobile left the bridge and landed on the ground 20 or 30 feet below upside down. When plaintiff first observed the plank in question there was no alternative except either to proceed or back up the entire distance he had traveled on the bridge, some 1,000 or 1,200 feet. Prior to reaching this plank the plaintiff ran over no others sticking up on the bridge".

Section 44-3401, Oregon Code 1930, which governs actions of this nature, reads as follows:

"Whenever any individual, while lawfully traveling upon any highway of this state or bridge upon such highway, the same being a legal county road, shall, without contributory negligence on his part, and without knowledge upon his part of the defect or danger, sustain any loss, damage or injury in consequence of the defective and dangerous character of such highway or bridge, either to his person or property, he shall be entitled to recover of the county in which such loss, damage, or injury occurred, compensatory damages * * *".

This case was tried on June 16, 1932, and about one month prior thereto this court, in the case of *Leesi v.*

*Yamhill County,* 136 Or. 295 (298 P. 911), in construing this statute, had held that there were "five conditions precedent" to the right of a plaintiff to recover in a case of this nature. These conditions were enumerated by the court as follows: "1. He [the plaintiff] must have been lawfully traveling on a highway or bridge upon such highway. 2. The highway must have been a legal county road. 3. He must have been free from contributory negligence. 4. He must have been without knowledge of the defect or danger. 5. He must have sustained a loss, damage or injury in consequence of the defective and dangerous character of such highway or bridge". See also: *Bailey v. Benton County,* 61 Or. 390 (111 P. 376, 122 P. 755); *Gigoux v. Yamhill County,* 73 Or. 212 (144 P. 437); *Spencer v. School District No. 1,* 121 Or. 511 (254 P. 357).

During the argument on the above-mentioned motion of defendant, the deputy district attorney called the attention of the court and counsel for plaintiff to the above decisions, yet no attempt was made by counsel for plaintiff to reopen his case and introduce additional testimony to meet the defects therein pointed out by the deputy district attorney.

We shall first consider whether or not the testimony in the case proves, or tends to prove, that the plaintiff was without knowledge of the defective and dangerous condition of the bridge. No specific testimony is pointed out by plaintiff's counsel in this repect. This court, however, has read the entire record to ascertain whether there is any evidence to show that plaintiff had no such knowledge or any testimony from which such inference could be drawn.

In his direct examination the plaintiff made the following statement:

"And then when I came to the trestle, I shifted into intermediate, and there was a board sticking up, and I swung to the right, to get around it, and I made a little turn to the left, and something threw me to the left, and that is all I remember,—something threw me over the railing and I went down".

On cross-examination the plaintiff's testimony was as follows:

"Q. Now, you saw this plank sticking up out of the highway and tried to dodge it?

"A. Yes, sir. * * *

"Q. And how far were you from this plank when you first noticed it sticking up in the highway?

"A. About thirty feet.

"Q. That is the first time you noticed it?

"A. The first time I noticed it sticking up, just looking at it * * *

"Q. Now, the first time you noticed this plank was when you were about thirty feet away?

"A. Yes, sir".

■ The testimony above set out does not meet the requirements of the statute and we fail to find any evidence in the record which shows or tends to show that the plaintiff had no knowledge of the defective condition of the bridge. Moreover, by his own witnesses, plaintiff attempted to prove that the bridge had been known to be defective for some weeks prior to the accident and that its condition was a topic of general conversation in that vicinity.

At the beginning of the trial, plaintiff, apparently in an effort to comply with the statute and the decisions construing the same, amended his amended complaint by stating that he had no knowledge of the defects in the bridge over which he was traveling when the accident occurred. Plaintiff, however, failed to prove this material allegation.

The testimony introduced after the denial of defendant's motion did not supply the defect in plaintiff's case above mentioned. Although defendant referred to this motion as one for a directed verdict, it was in effect nothing more than a motion for an involuntary nonsuit: *Wicks v. Sanborn,* 72 Or. 321 (143 P. 1007); *Brown v. Lewis,* 50 Or. 358 (92 P. 1058); and it should have been granted by the trial court.

■ The evidence relative to what plaintiff did to avoid the plank, after seeing it, does not, as a matter of law, prove that he was guilty of contributory negligence. "Fair minded persons might differ in their conclusions as to whether or not plaintiff failed to exercise due care to avoid injury".

The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

ROSSMAN, BEAN, and CAMPBELL, JJ., concur.