Argued December 1, 1938; affirmed March 28, 1939

# NOONAN *v.* CITY OF PORTLAND

(88 P. (2d) 808)

In Banc.

*C. E. Raymond*, of Portland (Davis & Harris, of Portland, on the brief), for appellant.

*L. E. Latourette*, of Portland (Frank S. Grant, of Portland, on the brief), for respondent.

*Joseph Woerndle, J. P. Kavanaugh*, and *R. N. Kavanaugh*, all of Portland, amici curiae.

ROSSMAN, J. This is an appeal by the plaintiff from a judgment of the circuit court entered in favor of the defendant, the City of Portland, after the plaintiff had completed the presentation of her proof and the court had sustained the defendant's motion for a nonsuit. Plaintiff's evidence indicated that she was tripped and thrown to the pavement at a street corner when her heel was caught by a defective angle iron forming the outer edge of the curb. The purpose of angle irons is to protect the concrete against wheel abrasions from vehicles turning the corner. Wear and erosion had developed a small depression between the cement and the iron into which the heel of one of the plaintiff's shoes entered, throwing her to the pavement.

Section 281 of Portland's charter provides:

"No recourse shall be had against the City for damage or loss to person or property suffered or sustained by reason of the defective condition of any sidewalk, street, avenue, * * * but in such case the person or persons on whom the law may have imposed the obligation to repair such defect in the sidewalk, street or public highway, or in the sewer, and also the officer or officers through whose official negligence such defect remains unrepaired shall be jointly and severally liable to the party injured for the damage sustained."

The city, in support of the circuit court's judgment, relies principally upon the section of the charter just quoted which, it contends, is valid and applicable to the plaintiff's claim. The plaintiff argues that the maintenance of streets and sidewalks is a corporate, not a governmental, function, and that this charter provision conflicts with § 5-502, Oregon Code 1930, and with Art. I, § 10, Constitution of Oregon, which provides:

"No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Section 5-502, Oregon Code 1930, reads:

"A suit or action may be maintained against any of the organized counties of this state and against the State of Oregon by and through and in the name of the State Highway Commission upon a contract * * * and an action or suit may be maintained against any of the other public corporations in this state mentioned in section 5-501 (Oregon Code) in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or commission of such other public corporation * * *."

As will be seen from the foregoing, the city seeks to avail itself of immunity from suit, while the plaintiff contends that such immunity is not available.

Dr. Robert Dorsey Watkins, in a very comprehensive treatise entitled The State as a Party Litigant (45 Johns Hopkins University Studies in Historical and Political Science (1927), p. 1) after tracing the doctrine of nonsuability through the Roman law, describes its development in England thus:

"That the king as chief of the feudal system had no court above him, in which he could be held liable,

as the feudal lords could be in his, was the result rather of accident than theory. This came, not from any 'juristic necessity,' but as a result of the practical working out of the feudal system; it was the logical result of that system, based as it was upon the 'proprietary theory of the kingship.' The king's privileges were personal, and such as any natural person was capable of enjoying and exercising; * * *''

He then delineates its development after the decline of the feudal system. We again quote:

''How then, from the position of personal exemption, was the idea of state exemption derived? The following is offered as a reasonable hypothesis. With the downfall of the feudal system and the growth of the idea of the modern state, the old restraints upon the king vanished. The king himself became the state. The king retained the powers he had held before by virtue of his position at the apex of the feudal pyramid; he then became the head of the Church also, and combined Divine attributes with temporal authority. At about this time doctrines of sovereignty appeared. * * * Even after actual power passed from the king, this idea of immunity was retained by the body politic, was kept by the state with a democratic as opposed to the state with an autocratic head.''

Next, Dr. Watkins shows that in the interval between the Revolution and the Constitution nonsuability was enjoyed by all the states, and that Hamilton, Madison and Marshall considered it irrational to suppose that a state could be made a defendant. The doctrine was taken for granted, according to Dr. Watkins, and ''was accepted rather as an existing fact by the people of the states, than adopted as a theory.'' Concerning the principle in America, the aforementioned article states:

''It seems a peculiar thing that the United States, the first of the 'Modern Democracies,' should from its

very inception have adopted the theory and practice of state and governmental immunity from suit. It is all the more remarkable from the fact that there was no central figure, no king to whom the attribute of irresponsibility because of infallibility could be attributed, thus affording at least a concrete juristic reason or argument for the doctrine.''

The treatise ascribes to very practical considerations the acceptance of the doctrine in America, thus:

''The States of the Union were at the time of the adoption of the Constitution heavily indebted. They had no intention of being forced to pay these debts by court proceedings, and would quite probably have refused to adopt the final draft of the Constitution had not they, or rather their people, been assured that no diminution of the sovereign right to be dishonest would be suffered. * * *''

Next, the article comments upon the adoption of the Eleventh Amendment by developing the facts of *Chisholm v. Georgia*, 2 Dall. 419, 420, 1 L. Ed. 440. In 1791 Alexander Chisholm, a citizen of South Carolina, brought an action of assumpsit against the State of Georgia in the federal supreme court which, being persuaded that Article III, §2, of the United States Constitution entitled him to maintain his suit, so held. That part of our Constitution read:

''The judicial power shall extend * * * to controversies to which the United States shall be a party; to controversies * * * between a state and citizens of another state.''

Shortly after this decision was announced the Eleventh Amendment to the federal Constitution was adopted, rendering impossible any further litigation of that kind.

After the doctrine of nonsuability had been adopted in America in this manner and had gained for itself

a secure place in our jurisprudence, there next came, according to Dr. Watkins, efforts upon the part of courts and legal scholars to state reasons for it. In other words, the acceptance of the doctrine and the assignment of supporting reasons were not simultaneous—the former was first. As we leave this treatise, we add that a companion article in The Doctrine of Nonsuability of the State in the United States by Dr. Karl Singeweld, 28 Johns Hopkins University Studies in Historical and Political Science (1910) 343.

We hope that the foregoing will be useful as a sort of prelude to the solution of the problem before us. Not alone has Dr. Watkins found that the acceptance of the doctrine in America was prompted by practical considerations; Chief Justice Marshall himself so stated in *Cohens v. Virginia,* 6 Wheat. 264 (405), 5 L. Ed. 257.

"It is a part of our history, that, at the adoption of the constitution, all the states were greatly indebted; and the apprehension that these debts might be prosecuted in the federal courts, formed a very serious objection to that instrument. Suits were instituted; and the court maintained its jurisdiction. The alarm was general; and, to quiet the apprehensions that were so extensively entertained, this amendment was proposed in congress, and adopted by the state legislatures. That its motive was not to maintain the sovereignty of a state from the degradation supposed to attend a compulsory appearance before the tribunal of the nation, may be inferred from the terms of the amendment. * * *"

As will be observed from the foregoing, the doctrine of nonsuability was accepted in America as an existing fact—after it had made its appearance came the efforts to assign reasons for it. None of the reasons has escaped criticism—barbed criticism—but the following

by Mr. Justice Holmes in *Kawananakoa v. Polyblank*, 205 U. S. 349, 51 L. Ed. 834, 27 S. Ct. 526, is most generally quoted:

"A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends."

In the early case of *Fowle v. Alexandria*, 3 Pet. 398, 7 L. Ed. 719, the federal supreme court "distinguished between 'moneyed corporations, or those carrying on business for themselves'—liable for torts—and 'municipal corporations,' 'established for the general purposes of government'—not so liable.": 16 Oregon Law Rev. 250. Under the theory that a municipality is a body politic for the purpose of administering within its boundaries the affairs of the state, immunity from suit was soon claimed by the municipalities. The courts perceived that when a city is engaged in the performance of a governmental function which the state would otherwise have been compelled to perform, nonsuability is as available to it as it would have been to the state; but that when a municipality is not engaged in the performance of such a function, but is employed in the domain of commerce, it can no more justly escape the consequences of whatever wrongs it may do than if an individual were similarly engaged. Influenced by these considerations, the courts, in order to promote justice and to subject municipalities to liability where it was deemed that liability should be borne, made the distinction between governmental and corporate functions of municipalities. While engaged in the performance of the former the doctrine of respondeat superior is not applicable, and hence a city is not responsible for the negligence of its servants; but when the opera-

tion is corporate in character, the rule of respondeat superior is applicable and the city must answer for the wrongdoings of its servants. While this distinction has rendered the municipalities liable in numerous instances where immunity would otherwise have been available, the distinction has met with extensive criticism by writers in the law reviews and, apart from occasional limited support (Borchard Government Liability in Tort, 34 Yale L. J. 240), with no defense. The widespread adoption of the commission form of municipal government has increased the insistence upon the part of the critics that no municipal activity be deemed governmental. Although no profit is derived from the maintenance of streets which in early English history were constructed by the government, and although they are commonly used not only by the local residents but also by others, nevertheless, today the maintenance of streets is generally regarded as a corporate function, due to what has been termed an "illogical exception" to the general rule of nonliability. The general rule deems governmental most activities which are of a noncommercial character and which are performed for the benefit of the general public. This state employs the doctrine of nonsuability and makes the distinction between governmental and corporate functions. The maintenance of streets in this state is deemed corporate: *Blue v. City of Union*, 159 Or. 5, 75 P. (2d) 977. From the earliest of times many municipalities in this state have escaped liability for failure to maintain their streets in a state of repair by insertion in their charters of exemption clauses of the general kind mentioned in the second paragraph of this decision.

The earliest of our decisions sustaining the validity of a charter exemption clause is *O'Harra v. City of*

*Portland*, 3 Or. 525, wherein the plaintiff, injured upon a defective Portland sidewalk, sought the recovery of damages. Section 347 Deady and Lane Code, the predecessor of § 5-502, Oregon Code 1930, provided:

"An action may be maintained against a county or other of the public corporations mentioned or described in § 346 * * * for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

Section 346 of the same code provided:

"An action at law may be maintained by any county, incorporated town, school district, or other public corporation of like character * * *."

The court, after stating that § 347 was adopted in 1862, and that two years later the legislature amended the Portland charter by inserting in it the following: "The City of Portland is not liable to anyone for any injury to the person * * * growing out of the condition of any streets," declared: "This provision of the charter, it will be seen, expressly exempts the city from any liability to persons for injuries received on account of streets being defective or out of repairs." It reversed a judgment in the plaintiff's favor.

In *Rankin v. Buckman*, 9 Or. 253, the circuit court had sustained a demurrer to a complaint which alleged that the plaintiff's ward had been injured on a street in the city of East Portland, and that the defendants, the officials of that city, had permitted the street, through willful negligence, to remain in an unsafe condition. The city was not a party defendant. In reversing the ruling of the circuit court, the decision, written by Chief Justice Lord, quoted from the city's charter the following:

"The city of East Portland is not liable to any one for any loss or injury to person or property growing

out of any casualty or accident to such person or property, on account of the condition of any street or public ground therein, but this section does not exonerate any officer of the city of East Portland, or any other person, from such liability, when such casualty or accident is caused by the wilful neglect of a duty enjoined upon such officer or person by the law, or by the gross negligence or wilful conduct of such officer or person in any other respect.''

The decision declared: ''In O'Harra v. City of Portland, 3 Or. 526, a provision similar to this clause was held to be constitutional,'' and added that the provision ''imposes the liability from which the city is exempted in such case upon any officer of the city'' who may be guilty of willful neglect. It continued that the city's liability ''is shifted by this section of the charter from the corporation to the officer. * * * Bearing in mind that the city is exempted by § 33 of the charter, from liability for the injury to any person growing out of any accident on account of the condition of any street, but that section does not exonerate any officer of the city from such liability when the accident is caused by the wilful neglect of a duty enjoined upon such officer.''

*Sheridan v. City of Salem*, 14 Or. 328, 12 P. 925, was an appeal by the city from a judgment recovered against it by a pedestrian injured upon a crosswalk. Mr. Justice Thayer took occasion to express his disapproval of the rule which held cities, rather than the negligent public officials, responsible when a person is injured upon a defective public street. The decision continued:

''Many of the larger towns of the state have avoided its effects, by provisions in their charters exempting the town from liability in such case, and imposing it

upon the officers thereof, where they have been guilty of negligence that occasioned the injury."

In *Mattson v. Astoria*, 39 Or. 577, 65 P. 1066, 87 Am. St. Rep. 687, the decision, which was written by Chief Justice BEAN, affirmed a judgment of the circuit court against the city after that court had held invalid the following clause of the city's charter: "Neither the city of Astoria nor any member of the council thereof shall in any manner be held liable for any damages resulting from a defective condition of any street, alley or highway." The decision pointed out that the charter gave the city authority over the streets, and the council power to exercise these functions and to assess and collect the necessary taxes. The court held that the exemption of both the city and its officials violated the provisions of Article I, § 10, of our Constitution, adding, however, "that it is within the power of a legislature to exempt a city from liability to persons receiving injuries on account of streets being defective or out of repair, is unquestioned: *O'Harra v. City of Portland*, 3 Or. 525. But in such case the injured party is not wholly without remedy. He may proceed personally against the officers." It cited numerous authorities holding that an officer who assumes the duties and is invested with the powers of a public office is liable to one injured through his neglect, and concluded by declaring: "A provision therefore of the city charter exempting the city from liability for damages resulting from defective streets is not violative of the Constitutional provision referred to, because it does not wholly deny the injured party a remedy for the wrong suffered."

In *Batdorff v. Oregon City*, 53 Or. 402, 100 P. 937, 18 Ann. Cas. 287, the plaintiff, who had been injured

through a defective condition of a sidewalk, instituted an action against the city and its councilmen which resulted in a judgment against the city and in favor of the officials. The city appealed from the judgment. The charter provided:

"Oregon City is not liable to any one for any loss or injury to person or property growing out of any casualty or accident happening to such person or property on account of the condition of any street or public ground therein; but this action does not exonerate any officer of Oregon City or any other person from such liability, when such casualty or accident is caused by the willful neglect of any duty enjoined upon such officer or person by law, or by the gross negligence or willful misconduct of such officer or person in any other respect."

In holding that the charter's grant of exemption to the municipality was invalid, the decision stated:

"If that clause be upheld as a valid exercise of the legislative will, it necessarily follows that a person will be remediless who sustains a pecuniary loss in consequence of an improved street being in a defective condition which was occasioned by ordinary negligence. * * * but, where a recovery is restricted by the act of incorporation to gross negligence and limited to the officers of a city, the charter practically denies a remedy to any person injured, contravenes Section 10, Article I, Constitution of Oregon, is therefore void, and leaves the liability as it existed at common law, whereby the city is accountable for such negligence."

The decision, however, recognized the validity of other charter exemption clauses; for instance, after reviewing *O'Harra v. Portland*, supra, and *Rankin v. Buckman*, supra, it stated:

"The rule thus announced, that a municipal charter may specially exempt the corporation from liability

for a failure to keep its highways in repair, and that such enactment is not violative of any constitutional provision, has been recognized: Templeton v. Linn Co., 22 Or. 313 (29 Pac. 795, 15 L. R. A. 730); Parsons v. San Francisco, 23 Cal. 462. In Piercy v. Averill, 37 Hun. 360, 363, the court, referring to a preceding action, says: 'Farther in the case of Bennett v. Whitney, 94 N. Y. 302, a street commissioner of Binghamton was held liable for negligence, although the charter exempted the city from liability.' "

In *Pullen v. Eugene,* 77 Or. 320, 146 P. 822, 147 P. 768, 147 P. 1191, 151, P. 474, Ann. Cas. 1917D, 933, the plaintiff, who had been injured upon a defective sidewalk, sued the city which depended upon the following provision of its charter:

"The City of Eugene shall not in any event be liable in damages to any person for an injury caused by any defect or dangerous place at or in any sidewalk, * * * unless the mayor, chairman of the street committee, or street commissioner shall have had actual notice of such defect or dangerous place, and a reasonable time thereafter in which to repair or remove such defect or dangerous place before the happening of such accident or injury, and in no case shall more than $100 be recovered as damages, from the city for any such accident or injury."

The circuit court set aside a verdict and judgment in favor of the plaintiff, stating that it had erroneously deprived the city of the benefit of the above provision. The plaintiff appealed. The decision of this court, written by Chief Justice MOORE, after pointing out the difference between this charter and the two held invalid in *Mattson v. Astoria,* supra, and *Batdorff v. Oregon City,* supra, held that the Eugene charter did not infringe upon Art. I, § 10, Oregon Constitution. It was evidently the opinion of the court that its previous

decisions had sufficiently developed the legal principles involved since, apart from the matter just mentioned, it contented itself with the following statement:

"To recover for a loss occasioned by official dereliction of duty, not involving more than $100, an action may be maintained against the defendant herein. If, however, the amount of injury caused by the negligence of the defendant or its agents exceeds that sum, an action may be maintained against the officers of the municipality whose duty it was to cause the street to be repaired, and to see that the highway was kept in suitable condition for public travel. Since such a remedy is availing, the section of the charter referred to does not violate the clause of the fundamental law of the state."

Although two petitions for a rehearing and a petition to recall the mandate were filed, the court adhered to its decision which affirmed the judgment of the circuit court.

In *Humphry v. Portland*, 79 Or. 430, 154 P. 897, the plaintiff, who had been injured upon a sidewalk, made as defendants the city, the mayor, the councilmen, the engineer and the abutting property owner. After the issues had been joined, the court dismissed as defendants the mayor and the councilmen upon their motion. After trial judgment was entered against the city alone, which, upon appeal, depended upon § 281 of its charter, being the identical section quoted in the second paragraph of this opinion. In the decision, written by Chief Justice MOORE, reversing judgment against the city, two members of the court concurred, a fourth concurred in the result, and a fifth dissented. From the opinion the following is quoted:

"By analogy and based on the doctrine asserted by Judge Deady in Eastman v. Clackamas County (C. C.), 32 Fed. 24, and recognized by Mr. Justice Lord

in Templeton v. Linn County, 22 Or. 313, 321 (29 Pac. 795, 15 L. R. A. 703), we conclude a municipal corporation, in the absence of any statute governing the matter, is liable to a person sustaining an injury from a defective street or sidewalk, the repair of which it is incumbent upon the city to keep up, if it have the means of performing that duty or is granted the right of taxation or given the power of levying a special assessment for that purpose, and we adhere to the rule heretofore asserted, that under Article I, Section 10, of the Constitution of Oregon, a right of action to recover damages for an injury thus sustained cannot be so abridged by legislation as to deprive the injured party of all remedy. It is conceded, however, that by proper enactment the liability thus imposed upon a municipal corporation may be shifted to its officers or agents."

The opinion continued with a consideration of the distinction between governmental and corporate functions and expressed the belief that maintenance of a street is a governmental duty for the neglect of which the city is not liable.

*Colby v. City of Portland*, 85 Or. 359, 166 P. 537, was an action against the city, its commissioners and its engineer by an individual who had been injured upon a defective crosswalk. At the conclusion of the plaintiff's testimony the city's motion for a nonsuit was sustained and later judgment was entered against the officials. No appeal was taken from the judgment in favor of the city, but the officials appealed from the judgment against them. In reversing that judgment, Chief Justice McBride took occasion to express his disfavor of § 281 of the Portland charter, being the exemption clause quoted in the second paragraph of this opinion. He made his observations in discussing the principles of law which hold that a public official is not responsible for the wrongdoings of his subordi-

nates provided he exercised ordinary care in their selection. The following is the part of the opinion to which we refer:

"The city is out of the case as it stands here, neither party having appealed as to it, but it may well be doubted whether it is competent for the charter-making power to take away from plaintiff a complete remedy against the city, which is always solvent and responsible, and whittle down to the point where plaintiff will have a partial and doubtful remedy against the city officers or against a subordinate officer whose position is, perhaps, a little lower than a deputy inspector and a little higher than that of the dog-catcher. To the writer it seems that such a conclusion is contrary to justice and in direct opposition to the doctrine laid down in Batdorff v. Oregon City, 53 Or. 402 (100 Pac. 937, 18 Ann. Cas. 287)."

Mr. Justice MOORE dissented, stating:

"I cannot concur in the conclusion reached in this case by the Chief Justice. A contrary rule was established in the case of O'Harra v. City of Portland, 3 Or. 525, where it was held that a section of the charter of the City of Portland exempting that municipality from liability for any personal injury arising from a defective street was operative. That determination has prevailed in this state nearly forty-eight years and should, in my opinion, be controlling."

*Caviness v. City of Vale*, 86 Or. 554, 169 P. 95, was an appeal by an individual who had been injured upon a defective sidewalk from a judgment in favor of the city, after its demurrer to the complaint had been sustained. The defendants were not only the city but also its councilmen and the owner of the lot adjoining the defective sidewalk. The charter provided:

"It is not only the duty of all owners of land within the city to construct sidewalks and to keep in repair

all sidewalks constructed or existing in front of, along or abutting upon their respective lots or parts thereof and parcels of land, but such owners are hereby declared to be liable for all damages to whomsoever resulting, arising from their fault or negligence in failing to construct or put such sidewalks in repair, and no action shall be maintained against the City of Vale by any person injured through or by means of the lack of or defect in any sidewalk.''

In affirming the judgment, Chief Justice McBRIDE, author of the decision, declared that *Batdorff v. Oregon City*, supra,

''seemed to settle firmly the rule in this state, that before a city can exempt itself from a liability which exists both at common law and by virtue of our Constitution, it must provide an equivalent remedy; one reasonably adequate to serve the purpose of the one taken away. In subsequent cases it has been assumed that where a city charter provided in general terms that any officers of the city charged with the duty of keeping a street in repair, should be liable for injuries arising from their neglect to perform such duty, furnished an equivalent remedy, and that such provision was sufficient to exempt the city from responsibility. In Colby v. City of Portland, 85 Or. 359 (166 Pac. 537), it was pointed out that such a provision did not furnish a remedy substantially equivalent to the one taken away, for the reason that while a city was liable on the principle of respondeat superior for the wrongful neglect of its officers to keep streets in repair, the members of the council were not so liable; * * *''

He continued that in *Colby v. City of Portland* ''we intimated a doubt as to the constitutionality'' of the Portland charter exemption clause, and concluded that a city ''can not shift responsibility having once assumed it, without giving persons who may be injured by defective walks some reasonable, adequate remedy for such injury.'' The decision sustained the Vale char-

ter exemption provision by pointing out that it placed upon the property owner "the duty to build the walk in the first instance and to keep it in repair thereafter. * * * There is justice under such circumstances in requiring the owner to be responsible for any damage which may ensue by reason of his neglect. * * * The owner of the abutting property is prima facie solvent, and it is not required that the remedy afforded should go to the extent of guaranteeing the immediate collection of any judgment that might be obtained * * *."

In *Platt v. Newberg*, 104 Or. 148, 205 P. 296, the plaintiff, injured upon a defective sidewalk, sued the city, its mayor and its councilmen. At the conclusion of the plaintiff's evidence the court sustained the motion for a nonsuit of the officials. The trial resulted in a verdict and judgment against the city. The latter appealed from that judgment and the plaintiff appealed from the judgment in favor of the officials. The charter vested in the city exclusive control over its streets, imposed upon it the duty of maintaining them, and gave to it ample taxation power to secure the necessary funds. The powers granted were vested in the mayor and council. The charter provided:

"The City of Newberg shall not in any event be liable in damages to any person for an injury caused by any defect or dangerous place, * * * unless said city shall have had actual notice of such defect or dangerous place and had a reasonable time thereafter in which to repair * * * and in no case shall more than one hundred dollars be recovered from the city for such accident or injury."

In sustaining the validity of this exemption clause and in reversing both judgments, the decision, written

by Mr. Justice McCourt, observed that the principle embodied in Art. I, § 10, Oregon Constitution, was borrowed from Magna Charta and that a rule of equal dignity was the doctrine of nonsuability. After citing all of the Oregon decisions reviewed in the preceding paragraphs together with *Coleman v. La Grande*, 73 Or. 521, 144 P. 468, and *Templeton v. Linn County*, 22 Or. 313, 29 P. 795, 15 L. R. A. 730, the decision continued:

"Relying upon the rules of law declared in the foregoing decisions, the legislature so long as it exercised the power to create municipal corporations, incorporated in many municipal charters enacted by it, provisions exempting the municipality from liability for failure to discharge the duty of keeping streets in repair, and the power of the legislature in that respect has been recognized by this court from an early day, and it would seem that the question of the right to exercise that power was firmly settled in this state."

The decision stated that although the plaintiff had argued that *Colby v. Portland* and *Caviness v. Vale* overruled earlier decisions "upholding the authority of the legislature to exempt a municipality from liability," the court believed that "those decisions do not have that effect." It indicated a belief that the duty of maintaining highways in repair is governmental in nature. We again quote from the decision:

"The cases hold with little, if any dissent, that the legislature may exempt a municipality from liability for defects in highways, or may also modify such liabilities or take them away; * * *"

That statement was fortified with citation of several decisions and texts together with quotations from *Schigley v. Waseca*, 106 Minn. 94, 118 N. W. 259, 16

Ann. Cas. 169, 19 L. R. A. (N. S.) 689; *MacMullen v. Middletown*, 187 N. Y. 37, 79 N. E. 863, 11 L. R. A. (N. S.) 391, and Dillon on Municipal Corporations (5th ed.), § 1709. The decision continued:

"The foregoing authorities amply sustain the power of the legislature to exempt the city from liability in the discharge of governmental duties, or to restrict or modify any liability existing against the city, whether the same arises by implication or by express statutory provision.

"The authorities reviewed establish that the provision of the Constitution upon which plaintiff relies (Section 10, Art. I, Const.) has no application to a case which involves the sovereign privilege of the state and its subordinate agencies of immunity from private action. The rule of law, that 'every man shall have a remedy by due course of law for injury done him,' is subordinate to the doctrine that the state cannot be sued without its consent. Thus when consent is given to sue, either the state or a municipality, when acting as a state agent, it is a matter of legislative favor, and may be withdrawn at any time, or modified or restricted at the will of the legislature. * * * It follows that the provisions of the charter limiting the liability of the defendant city to $100 for injuries due to the nonrepair of streets, and exempting it from liability altogether unless actual notice was had of the defect, was a valid exercise of legislative power * * *."

Justices McBride and Bean dissented. A third member of the court did not participate in the decision.

In the recent case of *Blue v. City of Union*, 159 Or. 5, 75 P. (2d) 977, Mr. Justice Lusk, in delivering the majority opinion, after describing the duty of street maintenance as corporate in character, said that in Oregon a city's liability for failure properly to perform that duty has "never been denied except in those instances where the city has been exempted by a valid provision

in its charter." Mr. Justice RAND, in his dissenting opinion, said:

"Unless prohibited by some provision of the federal or state constitution, it is within the power of the legislature to provide that a city shall or shall not be liable for its failure to perform a municipal duty. It cannot, of course, destroy vested rights which would be a taking of property without compensation, nor can it impair the obligation of contracts. These are prohibited both by the federal and state constitutions. But no person has a vested right to a remedy for an injury which may or may not happen in the future because of some future tort."

The above constitutes a review of all of the decisions of this court determining the validity of charter exemption clauses. However, *Eastman v. Clackamas County*, 32 Fed. 24, *Templeton v. Linn County*, 22 Or. 313, 29 P. 795, 15 L. R. A. 730, *Schroeder v. Multnomah County*, 45 Or. 92, 76 P. 772, and *Gerber v. Multnomah County*, 143 Or. 452, 22 P. (2d) 1103, have also been cited. A precis of the first two decisions is set forth in *Gearin v. Marion County*, 110 Or. 390, 223 P. 929, from which we quote:

"The reasoning of the court in the first case supports plaintiff's theory, but this reasoning has not been adopted as the law of this state and the conclusion there reached by Judge Deady was not necessary to the decision of that case as the accident there complained of happened before the amendment of what is now Section 358, Or. L., and as this amendment, as so held by Judge Deady, did not have the effect to operate retrospectively, the remedy given by the statute as it existed prior to the amendment had not been defeated. In the latter case, notwithstanding the dissenting opinion of Mr. Justice Lord, the majority opinion held to the contrary of what is contended for here. In that case Mr. Chief Justice Strahan, among other things,

said: 'The liability created against a county by this statute, as it existed prior to the amendment in 1887, was recognized and enforced in McCalla v. Multnomah County, 3 Or. 424, and the rule there stated continued to be recognized until the amendment. This is the first case arising under the statute as amended that has reached this court. There being no common-law liability, unless the statute has created a liability, there is none; and the statute having been repealed, there is none under the statute, if it were competent for the legislature to repeal it.' That decision was concurred in by Mr. Justice Bean who said: 'If the legislature can constitutionally take away both the common law and statutory right of action against a municipal corporation for an injury received from a defective highway, it certainly can withdraw the statutory remedy against a county. The provision of the constitution under consideration in this case does not seem to have been noticed or considered by the courts in O'Harra v. Portland, but the result of that decision is fatal to plaintiff's contention here, and I am not prepared to say that such a conclusion, so far at least as the statutory right of action is concerned, is incorrect, and therefore concur in the result reached by the Chief Justice.' "

In *Schroeder v. Multnomah County*, supra, this court, through Mr. Justice BEAN, said:

"It must, we think, be accepted as settled law that, unless made so by statute, a county is not liable for an injury resulting from a defect in a public road or highway, notwithstanding the law may require it to keep such road or highway in repair, and give it ample power to provide means with which to discharge the obligation. Such was the decision in Templeton v. Linn County, 22 Or. 313, 29 P. 795, 15 L. R. A. 730, and notwithstanding the argument of counsel, ably restating the grounds upon which it was sought to maintain that action, we are not disposed to overrule the decision. * * *"

In *Gerber v. Multnomah County*, supra, the action was based upon § 44-3401, Oregon Code 1930, which authorized travelers injured upon defective county roads, who were able to meet the conditions exacted by that statute, to sue the county and recover not to exceed $2,000 damages. The decision manifested no fault with that section of our laws, but since the plaintiff had not shown compliance with its exactions, a judgment in his favor was reversed.

█ Let us now endeavor to deduce a rule from these decisions. Before so doing it is well to take note of the following principles which we deem well established in this jurisdiction:

(1) The maintenance of streets and sidewalks is a ministerial, not a governmental, function.

(2) In the absence of a valid exemption law, a city is liable for an injury incurred through its negligence in failing to maintain its streets and sidewalks in a proper condition.

It is seen from the above review that in *O'Harra v. Portland, Pullen v. Eugene, Humphry v. Portland, Caviness v. Vale* and *Platt v. Newberg*, this court held valid charter exemption clauses. In the third of the above-cited decisions the clause which was held valid was the identical one with which we are now concerned. In addition the circuit court sustained the validity of the exemption clause in *Colby v. Portland*, and this court recognized the validity of such clauses in *Rankin v. Buckman* and *Sheridan v. Salem*. Since the injured person in *Rankin v. Buckman* did not make the municipality a defendant, an inference is possibly warranted that she believed that the decision in *O'Harra v. Portland* had removed all doubts concerning the validity of charter exemption clauses. The only exemption

clauses which have been held invalid were those which attempted to render nonsuable, not only the city but also the negligent officials: *Mattson v. Astoria,* and *Batdorff v. Oregon City.*

■ *O'Harra v. City of Portland* was decided in 1869, seventy years ago; *Rankin v. Buckman* in 1881, fifty-eight years ago; and *Sheridan v. Salem* in 1886, fifty-three years ago. In the intervening years many sessions of the legislature have occurred, many amendments have been made to our Constitution, and many enactments have been made by the people through the exercise of the initiative power, but no enactment has undermined the basis of the pronouncements in those decisions. To the contrary, after those three decisions had been announced 1893 Session Laws, p. 119, § 34 (p. 131) was adopted, which provides:

"* * * and such city or town shall not in any event be liable for any damages to any person for injury caused by any defect or dangerous place, at or in any sidewalk, crosswalk, street, alley, bridge, public ground, public building, or ditch, unless such city or town shall have had actual notice of such defect or dangerous place, and a reasonable time thereafter in which to repair or remove such defect or dangerous place before the happening of such accident or injury, and in no case shall more than $100 be recovered as damages from any such city or town for such accident or injury."

Since Portland's charter was not conferred upon it by the statute of which the above is a part, that provision is not applicable to it: *Umphlette v. City of Silverton,* 154 Or. 156, 59 P. (2d) 244. Nevertheless, the enactment of that act and of others which we shall now quote are indicative of the reliance which those concerned with municipal affairs probably placed upon

the decisions of this court. Nineteen Twenty-three Session Laws, Ch. 101, p. 4, § 35-3404, Oregon Code 1930, being a part of our dental inspection law, provide:

"No school district, or any school director, shall be liable to any pupil, or to the parents or guardian of any pupil, for or on account of any claim of any nature whatsoever for damage on account of any action of any person in connection with dental treatment hereby authorized."

In 1908 the people, acting under the initiative power, adopted the following (§ 65-1234, Oregon Code 1930):

"If a vessel or cargo, while being towed by a vessel owned or operated by the Port of Portland, or while under the charge of a pilot employee of the Port of Portland, is injured or lost by reason of the fault of such tug, or the negligence or incompetency of such pilot, the Port of Portland shall not be liable for any loss or injury thereof in excess of $10,000.00."

These several decisions, all employing substantially the same principles, seem to justify the employment in the present action of the doctrine of stare decisis. That rule "finds its support in the sound principle that when courts have announced, for the guidance and government of individuals and the public, certain controlling principles of law or have given a construction to statutes upon which individuals and the public have relied in making contracts, they ought not, after these principles have been promulgated and after these constructions have been published, to withdraw or overrule them, thereby disturbing contract rights that had been entered into and property rights that had been acquired upon the faith and credit that the principle announced or the construction adopted in the opinion was the law of the land.": 14 Am. Jurs. Courts, p. 283, § 60.

■ ■ The doctrine of stare decisis attaches great weight to decisions which have invited those who administer governmental affairs to depend upon them as correct expositions of the law, and which likewise incline those who deal with governmental bodies to determine their demands and course of action upon the decisions already announced. While the doctrine of stare decisis attaches great weight to precedents (*Hubley's Guardian v. Wolfe*, 259 Ky. 574, 82 S. W. (2d) 830, 101 A. L. R. 1359), it does not demand that the courts adhere to them if satisfied that they are manifestly wrong. The plaintiff claims that our previous decisions, with the exception of *Mattson v. Astoria* and *Batdorff v. Oregon City*, are in error. In this claim she is vigorously supported by the brief of amici curiae.

The attacks upon these decisions are based upon the following contentions: (1) the Portland charter exemption clause conflicts with Art. I, § 10, Oregon Constitution ("every man shall have a remedy by due course of law for injury done him * * *") ; (2) the exemption clause conflicts with § 5-502, Oregon Code 1930, which authorizes the institution of actions against a municipality "in its corporate capacity;" and (3) Art. XVIII, § 7, Oregon Constitution, preserves the following provision of Laws of 1853-1854, pp. 167 and 168 (concerning actions against municipal corporations): "An action may be brought * * * for an injury to the rights of the plaintiff, arising from some act or omission of such officers, or the body represented by them" and that, therefore, the provision just quoted authorizes the maintenance of this action.

The plaintiff seems to believe that the substance of her contentions was overlooked when this court considered the above-mentioned cases. It is true, as was

pointed out by Mr. Justice McBRIDE in *Colby v. Portland,* that *O'Harra v. City of Portland* made no mention of Art. I, § 10, Oregon Constitution, but, beginning with *Mattson v. Astoria,* the fourth of the above-cited decisions, every decision of this court concerning exemption clauses bestowed extensive consideration upon that section of our Constitution. *Pullen v. Eugene, Humphry v. Portland, Caviness v. Vale* and *Platt v. Newberg,* after considering that section, sustained the validity of the exemption clauses under consideration in them. *Templeton v. Linn County* also quoted and interpreted that section of our Constitution.

Section 5-502, Oregon Code 1930, and its predecessors have received much attention in the consideration of exemption clauses. The history of § 5-502, as far back as 1862, is given in *Blue v. City of Union,* supra, and a previous chapter is mentioned in *O'Harra v. City of Portland,* supra. Apparently the statute had its inception with Laws of 1853-1854, pp. 167-168, above quoted. In *O'Harra v. City of Portland* the court pointed out that two years after the legislature had enacted the statute with which we are now concerned, it conferred upon Portland its charter containing the exemption clause. The fact that the charter was subsequent in time apparently persuaded the court that it, and not the statute, was controlling. The statute was again considered in *Rankin v. Buckman,* and the court, after taking note of the fact that East Portland's charter was granted after the enactment of the statute, cited *O'Harra v. City of Portland* for the purpose of indicating the validity of the charter's exemption clause. In *Sheridan v. City of Salem* the statute again received attention and the court found that its construction became established in *McCalla v. County of Multnomah,*

3 Or. 424. The construction there placed upon it precluded the court from holding, as it was inclined to do, that cities were suable only for some "act or omission" of a strictly corporate character, and not for the breach of "duties they owed to the public, such as keeping public roads and streets in good repair." The statute was not again mentioned until we reached *Blue v. City of Union*, in which it received extensive attention in both the prevailing and the dissenting opinions.

The third contention of the plaintiff, that Article XVIII, § 7, Oregon Constitution, preserved Laws of 1853-1854, pp. 167-168, concerning the maintenance of actions against municipal corporations, was the basis, in part, of the dissenting opinion of Mr. Justice Lord in *Templeton v. Linn County*, but Chief Justice Strahan rejected that view by pointing out that Article XVIII, § 7, preserved only vested rights.

We have set forth the above for the purpose of indicating that all of the contentions presented by the plaintiff have in the past received consideration by this court.

As we stated before, the plaintiff and amici curiae do not concede that any of the above decisions, except *Mattson v. Astoria* and *Batdorff v. Oregon City*, were correctly decided. Their principal criticism of *Humphry v. Portland* and *Platt v. Newberg* is that in each of those decisions a statement was made that the maintenance of streets is a governmental function. That error, the plaintiff argues, must have led to an erroneous determination of the cases. But we believe that in each of the two criticised decisions the theory that the maintenance of streets is governmental in character was only one of the bases of the decision.

In the Humphry case this court, after reviewing its earlier decisions, stated:

"It is conceded, however, that by proper enactment the liability thus imposed upon a municipal corporation may be shifted to its officers."

And in *Platt v. Newberg* the decision stated:

"When the charter that imposes the duty expressly exempts the municipality from liability for such injuries, the requisite consent of the state that the municipality may be sued is withheld. * * * The cases hold with little, if any, dissent, that the legislature may exempt a municipality from liability for defects in highways, but may also modify such liabilities or take them away. * * * The foregoing authorities amply sustain the power of the legislature to exempt the city from liability in the discharge of governmental duties, or to restrict or modify any liability existing against the city. * * * The rule of law, that 'every man shall have a remedy by due course of law for injury done him,' is subordinate to the doctrine that the state cannot be sued without its consent."

We bring to a close the review of these decisions by quoting the following from 7 McQuillin, Municipal Corps., (2nd ed.), § 2906:

"Statutes in other states, where there is a common law liability, limit or wholly abolish the liability of the municipality. And it is well settled that the legislature has power, in the absence of constitutional restriction, to limit the liability of municipalities as to defective highways, or even wholly to exempt them from any liability for injuries resulting from defective streets. * * * So a charter provision which limits, or entirely takes away the liability of the municipality, is not objectionable as class legislation. * * * Having the power to deny to individuals a right of action against municipalities for injuries resulting from defective streets the legislature, if not forbidden by the

Constitution, may impose any conditions which it chooses to prescribe. So home rule charters may require ten days' written notice to the municipality, prior to the accident, of the existence of a defect in a street * * *. And it is well settled that the legislature may require notice of the injury to be served on a certain municipal officer or officers, within a specified time after the injury. * * * Charter provisions exempting, or limiting the liability of the municipality for injuries resulting from defective streets and sidewalks, and imposing such liability on negligent public officers, or in case of sidewalks, on abutting land owners, are generally sustained as valid and constitutional. * * *"

From 43 C. J., Municipal Corps., p. 979, § 1759, we quote:

"A municipality may be specifically exempted by its charter from liability for injuries caused by defects in streets, or the legislature may limit or modify such liability and impose conditions, such as requiring the person injured to give notice of the injury or present his claim for damages in the time and manner prescribed, although it has been held that a statute denying the injured person any remedy at all, either against the municipality or its officers or agents, is invalid; * * *"

See to like effect 4 Dillon, Municipal Corps. (5th ed.), § 1709, and 13 R. C. L., Highways, p. 315, § 261. Additional authorities are cited in *Platt v. Newberg,* supra.

We believe that all of our previous decisions were correctly decided and that their reasons were sound, with the exception of those that deemed the maintenance of streets a governmental function. We shall not repeat the reasons which we approve—they are set forth with sufficient clearness in the preceding decisions—but now give additional ones which we believe also sustain the validity of the charter exemption clauses.

The plaintiff's brief, supporting the statement with quotations from the charter, twice states: "The duty in the case at bar is imposed upon the defendant City of Portland by charter provisions and charter ordinances as follows * * *" The duty to which she refers is the maintenance of streets and sidewalks. This is not an instance, therefore, where the city negligently performed a duty which it had voluntarily assumed. If a city voluntarily enters into the business of operating a laundry, a garage, a gas plant or some other industry from which it hopes to derive an economic advantage, its voluntary entry into the venture and the commercial character of the latter afford good reasons for visiting upon the city all of the consequences ordinarily attendant upon the ill performance of corporate functions. But, as the plaintiff's brief states in the words above quoted, the duty which the city neglected was "imposed" upon it by its charter. The duty of maintaining streets, although a corporate one when performed by a city, is a duty likewise appropriate for performance by the state. In fact, as we have seen, it was the government which built and maintained the highways in early English history. Today the State of Oregon possesses the power to construct and maintain such of the city streets as constitute connecting links in state highways: 1931 Session Laws, Ch. 88, § 1. It is a matter of everyday observation that this power is exercised. We pause to observe that if an injury occurs upon a state-maintained street through the negligence of the state, there can be no recovery against it because § 5-502, Oregon Code 1930, does not authorize tort actions against the state; therefore, if another person, injured a few feet away upon an intersecting street maintained by the city, can secure recovery, as the plaintiff contends, we have a novel situation. When

the state imposed upon Portland the duty of street maintenance it had the right to set forth in the city's charter the consequences which should follow when anyone suffered an injury through the city's neglect of the duty: *MacMullen v. Middletown*, 187 N. Y. 37, 79 N. E. 863, 11 L. R. A. (N.S.) 391; *Henry v. Lincoln*, 93 Neb. 391, 140 N. W. 664, 50 L. R. A. (N.S.) 174. In all likelihood, when the lawmakers wrote the exemption clause they were not influenced by the reasons which the courts have assigned in support of such provisions, but were actuated by the practical considerations which prompted the early Americans to accept the doctrine of nonsuability. When these provisions were inserted in Oregon municipal charters most of our sidewalks were wooden affairs, which, together with the wooden crosswalks, were continuously getting out of repair. The first three of our decisions speaking of exemption clauses concerned wooden sidewalks, and *Colby v. Portland*, supra, decided in 1917, concerned a wooden sidewalk. The lawmakers, in imposing upon the cities springing up in the wilderness the duty of street and sidewalk maintenance, for practical purposes devised the exemption clauses. The New York decision just cited holds that (1) when a duty is imposed upon a city the charter may prescribe the consequences which shall attend an injury resulting from its breach; and (2) a grant of immunity from liability under such circumstances is valid. The Nebraska decision is to a similar effect. We believe that these decisions were correctly decided. Here, then, we have a sound basis, in addition to those given in our other decisions, for sustaining the validity of the exemption clause.

 Again, although the maintenance of streets is a corporate function, well-kept streets contribute to the

general welfare, security, convenience, etc. Were it not for what has been termed an "illogical exception" their maintenance would be deemed a governmental function. In *Etter v. Eugene,* 157 Or. 68, 69 P. (2d) 1061, we held that cities maintain their public parks in a governmental capacity. Streets as well as parks make their contribution to the general well-being. It is, we believe, because streets serve not only the corporate but also the governmental objectives of cities that all of our decisions have recognized that a city may be given, not absolute, but conditional immunity from liability for street accidents—conditioned upon liability reposing in someone who owed a duty to maintain them. In *Caviness v. Vale,* supra, the liability of the adjacent property owner sufficed. The Portland charter besides recognizing that the negligent public officials should respond for the injury occasioned by their neglect, also imposes upon the abutting property owner, after receipt of notice from the city engineer, the duty of repairing the sidewalk. The charter exemption clause with which we are concerned, after exempting the city, states:

"In such case the person or persons on whom the law may have imposed the obligation to repair such defect in the sidewalk, street or public highway * * * and also the officer or officers through whose official negligence such defect remains unrepaired shall be jointly and severally liable to the party injured * * *."

Section 116 of Portland's charter provides:

"It is not only the duty of all owners of land within the city to keep in repairs all sidewalks, constructed or existing in front of, along or abutting upon their respective lots * * * but such owners are hereby declared to be liable for all damages to whomsoever resulting, arising from their fault or negligence in fail-

ing to put any such sidewalk in repair, after the owner or agent thereof has been notified as provided * * *"

At common law the abutting owner was not similarly responsible: McQuillin, Municipal Corporations (2nd ed.), § 1971, and *Rees v. Cobbs & Mitchell Co.*, 131 Or. 665, 283 P. 1115. A pedestrian injured upon a defective sidewalk where the abutting property owner owes a duty of maintenance and is declared liable in the event of neglect, has a remedy against the neglectful property owner: *Caviness v. City of Vale*, supra; anno. 41 A. L. R. 222. Accordingly, anyone injured upon a defective sidewalk in Portland has a remedy not only against the negligent official but also against the property owner if, after notice from the city engineer, he failed to make the needed repairs: *Caviness v. City of Vale*, supra; McQuillin, Municipal Corporations (2nd ed.), §§ 2901 and 2916. Accordingly, while the charter provision under consideration withholds a remedy against the city, it recognizes a liability in the negligent officials and creates a right of action against the abutting property owner. Thus, the demands of *Caviness v. City of Vale*, supra, have been met. Here, then, is another reason for sustaining the validity of the exemption.

But the plaintiff contends that Art. I, § 10, Oregon Constitution, prevents the lawmakers from abolishing any common law rights, and that since the charter exemption clause deprives those injured, through the negligent failure of cities to maintain their streets, of their common law right of action against the cities, the clause is invalid. Plaintiff seems to believe that that point of view escaped attention in the consideration of our previous cases. The territorial statute (Laws 1853-1854, pp. 167-168, concerning actions against municipal

corporations) upon which the plaintiff, in part, depends was not rendered immune by Art. XVIII, § 7, Oregon Constitution, from legislative modification or repeal: *Covey Garage v. Portland,* 157 Or. 117, 70 P. (2d) 566. In support of her primary contention, the plaintiff relies largely upon *Eastman v. Clackamas County,* supra, and Justice Lord's dissenting opinion in *Templeton v. Linn County,* supra. But we have seen from the language which we previously quoted from *Gearin v. Marion County,* supra, that Justice Lord's views and the interpretation which *Eastman v. Clackamas County,* supra, placed upon Art. I, § 10, do not represent the construction of this court. In *Silver v. Silver,* 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221, 65 A. L. R. 939, the court said that it was unnecessary to "elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." We held to similar effect in sustaining the validity of a statute which was attacked under Art. I, § 10, Oregon Constitution: *Perozzi v. Ganiere,* 149 Or. 330, 40 P. (2d) 1009. Article I, § 10, Oregon Constitution, was not intended to give anyone a vested right in the law either statutory or common; nor was it intended to render the law static. Notwithstanding similar constitutional provisions in other states, the courts have sustained statutes which eliminated the husband's common law liability for the torts of his wife and which placed the wife upon an economic level with her husband. They have likewise sustained statutes which have abolished actions for alienation of affections, actions for breach of promise, etc. The legislature cannot, however, abolish a remedy and at the same time recognize the existence of a right: *Stewart v. Houk,* 127 Or. 589, 271 P. 998, 272 P. 893, 61 A. L. R.

1236. We, therefore, conclude that this contention reveals no infirmity in the charter exemption clause.

■ The plaintiff contends that the charter exemption clause, granting as it does the privilege of nonsuability to the city, is invalid because § 5-502, Oregon Code 1930, authorizes suits and actions against municipal corporations in their corporate character. We observe that the statute adds "for an injury to the rights of a plaintiff arising from some act or commission." Of course, the plaintiff's injury was not caused by "some act or commission" of the city. According to the plaintiff, it was incurred through the city's neglect; that is, through its omission. But 1929 Session Laws, ch. 227, § 2, modified the statute by substituting the word "commission" for the word "omission." We shall close our eyes to this circumstance as we proceed. As was indicated in *O'Harra v. Portland,* supra, the city was given its charter containing the exemption clause two years after the legislature enacted the statute which, after amendment by Laws of 1887, p. 45, and reamendment by 1929 Session Laws, ch. 227, § 2, is now § 5-502. Throughout its entire legislative history the following words have remained part of the act: "An action may be maintained against * * * the public corporations * * * mentioned in sections * * * for an injury to the rights of the plaintiff arising from some act or omission of such other public corporation." Some of the cases reviewed in preceding paragraphs were maintained under that part of the act and its common law counterpart. Thus by a process of legislative accretion, matter has been added, but the above-quoted language has never been altered with the exception of the substitution of the word "commission" for the word "omission." In the absence of

a clear indication to the contrary, a statute which is incorporated within an amendatory act, without any substantial or material change in its phraseology, takes its antiquity from its original enactment and is neither deemed repealed nor reenacted by being incorporated in the amendatory act. The principle is better stated in *State v. McGinnis,* 56 Or. 163, 108 P. 132, from which we quote:

"Whatever the rule may be in other jurisdictions, it is settled in this State that where a section of an act is amended 'so as to read as follows,' and the later law sets forth the changes contemplated, the parts of the old section that are incorporated in the new are not to be treated as having been repealed and re-enacted, but are to be considered as portions of the original statute, unless there is a clear declaration to the contrary, in the absence of which it is only the additions that have been made to the original section that are to be regarded as a new enactment."

See to like effect *Brun v. Lazzell,* 172 Md. 314, 191 Atl. 240, 109 A. L. R. 1453; *In Re Wilson's Estate,* 102 Mont. 178, 56 P. (2d) 733, 105 A. L. R. 367; *Duggan v. Ogden,* 278 Mass. 432, 180 N. E. 301, 82 A. L. R. 765.

■ Both the 1887 and the 1929 amendatory acts employed the words "so as to read as follows." Accordingly, the above rule of statutory construction controls the situation before us, and the part of § 5-502 above quoted is, therefore, deemed to have been in effect since 1862. Therefore, it is older than the Portland charter exemption clause. The latter is not only more recent but it is a special act. It is true, as was indicated in *City of Portland v. Welch,* 154 Or. 286, 59 P. (2d) 228, 106 A. L. R. 1188, and *Burton v. Gibbons,* 148 Or. 370, 36 P. (2d) 786, that generally charter provisions are amenable to general statutes. But in the present

instance the Portland charter provision is a special enactment which was adopted subsequently to the general statutes. *O'Harra v. Portland,* supra, *State v. Sturges,* 9 Or. 537, and *Hall v. Dunn,* 52 Or. 475, 97 P. 811, 25 L. R. A. (N. S.) 193, authorize the conclusion that § 5-502 did not repeal the exemption clause.

The above disposes of all attacks which have been made upon the exemption clause. Even the writers who have most bitterly assailed the doctrine of nonsuability declare that it has become so firmly entrenched in our jurisprudence through statutes, charter provisions, and the decisions of the courts that its opponents must resort to the legislature rather than to the courts. See 22 Virginia Law Rev. 910. Certainly, in Oregon, where this court has repeatedly sustained charter exemption clauses, and where no conflict exists between them and the Constitution, we have no power to disregard the exemptions. We conclude that the exemption clause is valid.

■ The plaintiff, after calling attention to the fact that the defect which caused her to trip and fall was in the sidewalk curb, contends that since the charter mentions only ''any sidewalks, street, avenue, lane, alley, court or place'' and does not employ the word ''curb'', the exemption clause is not applicable in this case. If the curb was not a part of the sidewalk, and we believe that it was, it certainly was a part of the street. This contention is without merit.

It follows from the above that the circuit court did not err when it held that the city's charter protected the city from liability in this instance. It properly sustained the city's motion for a nonsuit.

So far we have referred to the city as the defendant, although when the action was instituted the city's

mayor and four commissioners, together with the city engineer and the owner of the adjacent lot, were also defendants. After some rulings adverse to the plaintiff had been made, a third amended complaint was filed which named as the defendant only the city. Then the latter filed its answer and the plaintiff a reply. Eventually the cause proceeded to trial "against the defendant City of Portland alone." We quoted from plaintiff's brief. After the trial had resulted adversely to the plaintiff her counsel, in entitling the notice of appeal and similar papers, inserted the names of all of the original defendants with the exception of the name of the adjacent property owner. Upon the city's motion these names were stricken. The plaintiff now asks us to review all of the intermediate orders.

■ We believe that the plaintiff has not pursued the proper course to entitle her to challenge the regularity of the intermediate orders. When she filed the third amended complaint which eliminated as defendants all except the city, her act in so doing must be regarded as having been voluntary; thereupon all of her previous pleadings ceased to perform any further function as pleading in the case. The following language in *Wells v. Applegate,* 12 Or. 208, 6 P. 770, has been many times cited with approval:

"A part of the second amended answer was struck out on motion, and a demurrer was sustained to another part setting up a counter-claim. Defendant thereupon filed another answer purporting to be a new answer, but which it is now argued is not such, because it was but a copy of the former answer with the parts objected to left out; and even if it were a new answer, it is argued that exceptions to the order striking out and in sustaining the demurrer was not waived. Suppose the answer to be what it purports to be—a new answer. Then the rule is, when a demurrer is overruled and the

party pleads over, the demurrer is abandoned, and it ceases to be a part of the record. (Young v. Martin, 8 Wall. 357.) So, 'when a pleading is amended, the original pleading ceased to be a part of the record, because the party pleading having the power, has elected to make the change.' * * * Taking a bill of exceptions will not aid a party if he pleads over. (Plummer v. Roads, 4 Iowa 589,) Then is the answer a new answer? The act of pleading over is conclusive of an intention to abandon the former answer. (And see Laws Oreg. p. 126, § 102) The pleadings on which the parties went to trial became the sole pleadings in the case, as if no others ever existed. By filing the new answer the former answer was in effect withdrawn, and all motions and demurrers relating to it accompanied it."

In *Slemmons v. Thompson*, 23 Or. 215, 31 P. 514, to the plaintiff's petition for a writ of mandamus the defendant made a return and later the plaintiff filed a reply. Then a trial occurred. Later the plaintiff, pursuant to leave, filed an amended petition and writ which set up a different set of facts. To the amended pleading the defendant's demurrer was sustained and later the court dismissed the writ, giving judgment against the plaintiff. From this judgment the plaintiff appealed, making as a part of the record the original proceedings. In disposing of the matter, the decision stated:

"Ordinarily, when a pleading is amended, the original pleading ceases to be a part of the record, because the party pleading, having the power, has elected to make the change: Wells v. Applegate, 12 Or. 209 (6 Pac. Rep. 770). Much of the brief of the defendants is consumed in the statement of this matter, as much of their argument based on it is urged in support of the ruling of the court in dismissing the writ. Under such circumstances, we have felt bound to state it; and

if we could consider it, the case would come to an end at once, as there can be no question but that the ruling of the court on the first application was correct. Besides, if there were such defenses as disputed ownership of the shares requiring litigation to settle, or the pendency of a suit in equity between the same parties for an adjudication of the same matter, they ought to have been pleaded; otherwise they cannot be considered. We must look, therefore, to the facts alleged in the amended writ, which by the demurrer stand admitted, to determine whether the plaintiff shows himself entitled to relief by mandamus.''

It is unnecessary to cite other decisions of this court holding that a previous pleading is superseded by an amended one and is, therefore, no longer regarded as a pleading: They are numerous. However, the following show that our decisions are in accord with the trend of authority: 1 Bancroft's Code Pleading, p. 810; 49 C. J., Pleading, p. 558, § 773; and 47 C. J., Parties, p. 166, § 307. We conclude that our practice does not authorize us to review the merits of the intermediate orders.

It follows from the above that the judgment of the circuit court is sustained.

RAND, C. J., and KELLY, BELT, LUSK, BEAN and BAILEY, JJ., concur.