*389 DE MUNIZ, J. pro tempore,
dissenting.
Faced with an Article I, section 10, Remedy Clause controversy, the majority — for the first time in this court’s history — upholds a legislative limitation that prevents plaintiff from fully recovering the economic damages that a jury awarded to restore her constitutionally protected right.[1] The Remedy Clause guaranteed plaintiff a “remedy by due course of law” for injury to her person — a remedy that the jury, “by due course of law,” determined should include the full amount of economic damages attributable to defendant.[2] Yet the majority upholds, as constitutional, a standardless and arbitrary legislative deprivation of that remedy and does so without adherence to the text and context of the Remedy Clause or this court’s prior decisions.
In Clarke v. OHSU, 343 Or 581, 610, 175 P3d 418 (2007), this court held that the same statutory damage cap at issue in this case violated the Remedy Clause because we were unable to discern anything
“from our state’s history, or from the nature, the form, or the amount of recovery available for the preexisting common law claim, that would permit this court to conclude that the *390 limited remedy for permanent and severe injury caused by medical negligence that is now available under the OTCA meets the Article I, section 10, remedy requirement.”
That same reasoning applies with equal force to plaintiff’s common-law claim in this case and the result should be the same; i.e., as applied here, the damage cap at issue in this matter violates the Oregon Constitution’s Remedy Clause. By essentially limiting our holding in Clarke to its facts, however, the majority sidesteps the reasoning in that case and, in doing so, significantly undermines the Remedy Clause protections that, until this day, were enjoyed by all Oregonians.
According to the majority, the court explained in Clarke that
“Article I, section 10, does not deprive the legislature of the authority ‘to vary and modify both the form and the measure of recovery for an injury,’ so long as the legislature leaves the plaintiff with a substantial remedy.”
353 Or at 375 (quoting Clarke, 343 Or at 606) (emphasis supplied by the majority). What the court actually wrote in Clarke, however, was that
“Article I, section 10, does not eliminate the power of the legislature to vary and modify both the form and the measure of recovery for an injury, as long as it does not leave the injured party with an ‘emasculated’ version of the remedy that was available at common law.”
Clarke, 343 Or at 606. The majority’s efforts to replace the phrase “emasculated version of the remedy” with “substantial remedy” is not an accident; it is necessary to the majority’s conclusion. In Clark, the court referred to an “emasculated version of the remedy” advisedly because our case law had imbued the phrase with a clear meaning; i.e., a remedy that was “incapable of restoring the right that has been injured.” Id. (quoting Smothers v. Gresham Transfer, Inc., 332 Or 83, 124, 23 P3d 333 (2001)). The steps that the majority has taken to now eliminate that phrase for the purpose of purging “an unfortunate, if not sexist” term from the judicial lexicon does far more than substitute a nonsexist term; it abrogates Clarke or, at a minimum, severely limits its holdings. Only by inserting the term “substantial” *391 into the court’s holding in Clarke is the majority able to construe the Remedy Clause to permit the truncated remedy at issue here; i.e., a limited cause of action and a limited scope of recovery that, applied in tandem, are incapable of restoring plaintiff’s economic injuries. Nothing in our case law supports that construction; indeed, our precedents make clear that the Remedy Clause prohibits legislative limitations that are “incapable of restoring the right that has been injured.” (Emphasis added.) Analyzing legislative limitations on remedies under that standard is quite different from analyzing — as the majority does — whether an award of damages is, in some way or another, quantitatively “substantial.” Accordingly, I dissent.
Reduced to its essential elements, the majority’s position appears to be that Article I, section 10, does not prohibit the legislature from enacting any limitation on civil recoveries — regardless of whether the result is capable of restoring an injured right or not — so long as the remedy that remains is “substantial.” 353 Or at 375. The basis for that proposition can be summed up in three broad points drawn from the majority’s opinion: (1) under this court’s case law, the “constitutional adequacy of a modern remedy may be established by the fact that the modern remedy is ‘substantial’ and does not leave the plaintiff ‘wholly without remedy.’” 353 Or at 374-75; (2) under that principle, $100,000 in economic damages — contrasted against a $382,500 jury award for the same — is, as a matter of law, a “substantial” award; and (3) plaintiff was only entitled to restoration of “an injury that would have been recognized as the basis for a cause of action in 1857” and, in 1857, plaintiff’s contributory negligence would have been a complete bar to recovery. I address each of those points in turn below.
I. USE OF THE WORD “SUBSTANTIAL” IN OREGON’S REMEDY CLAUSE JURISPRUDENCE
With regard to statutory caps on civil damages, this court has used the word “substantial” in its analysis in only two cases: Hale v. Port of Portland, 308 Or 508, 783 P2d 506 (1990), and Greist v. Phillips, 322 Or 281, 906 P2d 789 (1995). Neither case, however, supports application of the term “substantial” to what plaintiff has been forced to *392 accept here: a truncated remedy that is incapable of restoring plaintiff’s injured rights.
A. Hale v. Port of Portland
In Hale — -a personal injury case involving both the Port of Portland and the City of Portland — this court upheld an early version of the Oregon Tort Claims Act (OTCA) that capped tort damages in actions instigated against public bodies. In doing so, the court cited two cases — Noonan v. City of Portland, 161 Or 213, 88 P2d 808 (1939) and Evanhoff v. State Industrial Accident Commission, 78 Or 503, 154 P 106 (1915) — for the proposition that the resulting remedy must be substantial:
“Noonan and Evanhoff held only that Article I, section 10, is not violated when the legislature alters (or even abolishes) a cause of action, so long as the party injured is not left entirely without a remedy. Under those cases, the remedy need not be precisely of the same type or extent; it is enough that the remedy is a substantial one.”
Hale, 308 Or at 523 (emphasis added). The court never explained what, exactly, constituted a substantial remedy, only that Noonan and Evanhoff required as much. Importantly, however, at the time Hale was decided, the OTCA did not eliminate — as it does now — the individual liability of public employees for their negligent acts. And that factor — the availability of an alternative remedy that allowed a plaintiff to fully recover damages available at common law — was a central component in both Noonan and Evanhoff.
In Noonan, the legislative limitation at issue was a Portland municipal ordinance that completely immunized the city from liability for personal injuries caused by defective city sidewalks. The provision, however, specifically provided that injured persons could maintain a common-law action against the individual officers and employees who were responsible for maintaining the sidewalks. From the court’s perspective, the existence of that alternative remedy proved to be key. Affirming the validity of the immunity provision, the court wrote that
*393 “all of our decisions have recognized that a city may be given, not absolute, but conditional immunity from liability for street accidents — conditioned upon liability reposing in someone who owed a duty to maintain them.”
Noonan, 161 Or at 247 (emphasis added).[3]
In Evanhoff, the court upheld an early iteration of Oregon’s workers’ compensation program. Under the program, participating workers injured on the job were, among other things, precluded from bringing negligence actions against their employers to obtain damages beyond their medical expenses. The program, however, was not compulsory; both employers and workers could elect not to participate in it and opt, instead, to pursue the remedies and defenses for work-related injuries that existed outside the workers’ compensation framework. Again, the existence of an alternative remedy in the wake of a truncated one was the dispositive factor in the court’s Article I, section 10 analysis. The court described it thus:
“The state says to the employer and employé [sic] alike:
“‘We present to you a plan of accident insurance which you may accept or reject at your own pleasure. If you accept, you must be bound by its terms and limitations; if you reject it, the courts are open to you with every constitutional remedy intact. Take your choice between our plan and such remedies as the statute gives you.’”
Evanhoff 78 Or at 517-18 (emphasis added).
Neither of those cases can be read for the proposition that a partial remedy — like the one the majority considers “substantial” here — is capable of satisfying the Remedy Clause. Rather, both cases upheld legislative provisions that had eliminated one potential source of recovery, while leaving another equivalent source intact. In that respect, Hale is no different from the cases it relied on: Although the OTCA *394 had placed a cap on the amount of civil damages available in tort from a public body, the officers, employees, and agents of those bodies remained liable for the damages caused by their negligent actions.[4] Thus, under Hale, requiring a “substantial” remedy for purposes of Article I, section 10, means that, when the legislature alters or abolishes a cause of action, it must provide an equivalent remedy that is as capable of restoring a plaintiff’s injuries as was the original. That standard has not been met here.
B. Greist v. Phillips
Greist was a wrongful-death case not cognizable at common law, and this court has since disavowed the application of the Remedy Clause to the circumstances of that case.[5] However, even assuming that Greist retains some precedential value, the analysis in Greist was quite different from the analysis used by the majority in this case. In Greist, a jury had awarded the plaintiff $1.5 million in non-economic damages as the representative of her deceased *395 son’s estate. This court nevertheless upheld against a Remedy Clause challenge a statute that capped the plaintiff’s recovery for noneconomic damages at $500,000. In doing so, the court noted that the plaintiff had not been left without a remedy: she had received $500,000 in noneconomic damages, plus a 100 percent recovery of her economic damages in the sum of $100,000 — a category of damages to which no statutory limit applied. The court went on to acknowledge that, although that remedy was less than what the plaintiff would have been entitled to before the noneconomic damages cap was put in place, it was nevertheless “substantial.” See 322 Or at 291 (citing Hale).
The court, however, explained exactly why that was so. It wrote:
“The remedy for wrongful death is substantial, not only because 100 percent of economic damages plus up to $500,000 in noneconomic damages is a substantial amount, but also because the statutory wrongful death action in Oregon has had a low limit on recovery for 113 years of its 133-year history. See 322 Or at 294, 906 P2d at 796, below (discussing history of wrongful death action in Oregon). As noted there, the wrongful death claim came into existence with a limitation, and the highest previous limitation (1961-1967) was $25,000. In relation to that history, the present remedy is substantial.”
Id. (emphasis added). Consequently, in Greist — like Hale— the metes and bounds of a “substantial” remedy were clearly defined: Where a plaintiff had no common-law remedy aside from a legislatively created statutory claim that, historically, had been accompanied by low limitations on recovery, damage caps that allowed the plaintiff full economic damages, plus up to $500,000 in noneconomic damages, provided a remedy that was “substantial.”
My point is that, if the new constitutional bellwether for Remedy Clause controversies is now the presence of a “substantial” remedy, the remedy afforded plaintiff in this case falls woefully short of that mark as defined by our case law. Unlike the plaintiff in Greist, plaintiff in this case cannot pursue a wrongful death action for the injuries she has suffered; consequently, there is no possibility for full *396 recovery of her economic damages and no possibility of a $500,000 maximum in noneconomic damages. Unlike the plaintiff in Hale, plaintiff’s recovery against the city has been statutorily capped, and she cannot pursue a common law claim against the negligent city employee Consequently, plaintiff is caught coming and going — squeezed from one end by a statutory damages cap that arbitrarily limits her recovery and on the other by the complete elimination of a claim that would have permitted her a full recovery. There is nothing “substantial” about that predicament. Under Oregon law, plaintiff has been left with a constitutionally inadequate remedy that is incapable of restoring her injured rights, a circumstance that no amount of linguistic fiddling on the majority’s part can change or conceal.
II. QUANTIFYING THE “SUBSTANTIAL” REMEDY
According to the majority, quantifying an award of damages as “substantial” with any degree of precision is probably impossible. 353 Or at 374. Undeterred by its own observation, however, the majority decides that, in this case, the sum of $200,000 has, indeed, provided plaintiff with a “substantial” remedy. To reach that result, the majority seeks support by negative implication, asserting that the remedy available to plaintiff in this case is “far more substantial” than the remedies that this court previously has determined to be constitutionally inadequate. To that end, the majority compares the limited total damages that plaintiff was allowed to recover here — $200,000—with the respective remedies that this court held to be unconstitutional under the Remedy Clause in Neher v. Chartier, 319 Or 417, 879 P2d 156 (1994), and Clarke v. OHSU, 343 Or 581.
Under the majority’s reading of Neher,[6] *397 353 Or at 375 (emphasis in original). In its reading of Clarke, the majority posits that, because
*396 “although the estate of the victim had not been completely deprived of a remedy by virtue of the existence of a $3,000 burial benefit under workers’ compensation law, the parents of the victim had been totally deprived of any remedy.”
*397 “the statutory limitation of $200,000 deprived the plaintiffs of all but one percent of the more than $17 million in damages that they would have otherwise recovered, the limitation left them with a constitutionally inadequate remedy.”
Id. Those observations lead the majority to tacitly conclude that, because plaintiff in this matter has (1) not been totally deprived of a remedy, as was the case in Neher, and (2) recovered more than the “paltry fraction” at issue in Clarke, the $200,000 cap on her recoverable damages does not offend the Oregon Constitution.
As a matter of both logic and law, however, the majority’s position fails. First, the conclusion that the limited remedies at issue in Neher and Clarke were unconstitutional does not make the remedy at issue in this case constitutional.[7] Second, neither Neher nor Clarke were cases in which the court sought to quantify a damage award as constitutionally “substantial.” Instead, both cases presented the court with the same two problematic points: The law had recognized a right of recovery for the injuries of each respective plaintiff and, at the same time, abolished remedies that would have facilitated that recovery.
In Neher, this court invalidated statutory provisions that had immunized public bodies and their employees from the statutory wrongful death claims of persons covered by the workers’ compensation statutes. The court did so reasoning that the statutes in question had left the parents— and sole heirs- — of 25-year-old Julie Neher without any legal remedy at all after their daughter was negligently struck and killed by a Tri-Met bus. To that end, the court wrote:
“ORS 30.010 recognizes the existence of a right of recovery for surviving parents for damages to compensate them ‘for pecuniary loss and for loss of the society companionship and services of the decedent.’ ORS 30.265(3)(a), however, operates to abolish the parents’ remedy under circumstances such as those present in this case, not only *398 against the municipality, but against the municipality’s negligent employees. Such a result is irreconcilable with this court’s holdings!.]”
Neher, 319 Or at 428 (emphasis added; internal citations omitted).
In Clarke, this court held that an OTCA damages limitation violated the Remedy Clause. The plaintiff had instigated a medical negligence action against Oregon Health Sciences University and a number of individual physicians that it employed. The plaintiff brought that action on behalf of her son who had suffered total and permanent disability as the result of the negligent treatment he had received while in the hospital’s care. The child’s economic damages alone exceeded $12 million, a sum that was undisputed by OHSU, as was its negligence in the matter. At the time, however, the OTCA immunized the individual doctors from liability and capped the damages recoverable from OHSU at $200,000. This court held that the elimination of the plaintiff’s claim against the hospital’s doctors and the substituted and limited remedy against the hospital violated the Remedy Clause as an “emasculated version of the remedy that was available at common law.” Clarke, 343 Or at 610. In reaching that conclusion, the court emphasized that the legislature had eliminated the plaintiff’s “preexisting right to obtain a full recovery” for the injuries sustained by her son. The court wrote:
“We view plaintiff’s economic damages of over $12 million as representative of the enormous cost of life-time medical care currently associated with permanent and severe personal injuries caused by the medical negligence of a state officer, agent, or employee. Defendants do not argue that those damages do not constitute an ‘injury’ within the meaning of the constitution. Nor does anything in the legislation suggest such a conclusion by the legislature. Yet, the legislature has completely eliminated an injured person’s preexisting right to obtain a full recovery for those damages from the individual tortfeasors who negligently caused the injuries.”
Id. at 609 (emphasis added).
In short, the court’s decisions in Neher and Clarke both turned on the lack of a restorative remedy. And those *399 two cases do not exist in a vacuum. This court has frequently referred to that restorative quality as the benchmark of a remedy’s constitutionality. See Smothers v. Gresham Transfer, Inc., 332 Or 83, 124, 23 P3d 333 (2001) (noting that the term “remedy” refers, in part, to that which is “required to restore a right that has been injured”); Davidson v. Rogers, 281 Or 219, 222, 574 P2d 624 (1978) (noting that, in an action for libel, the remedy of a retraction did not offend the Remedy Clause because “retraction can come nearer to restoring an injured reputation than can money”); Holden v. Pioneer Broadcasting Co., 228 Or 405, 419, 365 P2d 845 (1961) (noting that the “remedy afforded through retraction would seem to come closer to providing an effective means of repairing the harm” resulting from act of defamation).
The majority’s contrary application of Neher and Clarke scrubs the restorative purpose of the Remedy Clause from this court’s jurisprudence. Moreover, it suggests that any recovery for damages is “substantial” so long as the amount awarded falls somewhere between the sum of zero and a figure that, while not “enough,” is, in the court’s estimation, nevertheless “substantial,” whatever that means. Untethered to a restorative purpose, that standard is both arbitrary and unworkable.
The majority, however, does not rely solely on its conclusion that the award in this case was “substantial” to justify its decision here. It goes on to opine that the remedy provided in this case also constitutes a “quid pro quo” because, with regard to the police officer who struck plaintiff,
“the city remains liable for the torts of its employees committed within the scope of employment. Thus, while the legislature limited the amount that may be recovered from individual defendants who are municipal employees, it substituted the ‘deep pocket’ of the municipality itself as the ultimate payor. Plaintiffs, in other words, have been conferred a substantial benefit in exchange for the damage limitation.”
353 Or at 376 (emphasis added).
Let me be absolutely clear: the legislature did not “limit” the amount that could be recovered from Officer *400 Boyle when it amended the OTCA in 1991; it abolished any option for plaintiff to recover any amount from Officer Boyle, by immunizing him from tort liability for negligent acts occurring in the course of his employment. And in 1991, the legislature did not confer any additional benefit to compensate for that deprivation. The legislature previously had granted a class of plaintiffs access to the “deep pockets” of the municipality for torts arising out of governmental functions, but that benefit had already served as a “quid pro quo” for the cap on tort damages arising out of muncipalities’ proprietary functions. Having been “spent” for that purpose, municipal “deep pockets” could not then serve as a benefit for a subsequent deprivation — elimination of employee liability. Further, the “deep pockets” of the municipality supposedly substituted in Officer Boyle’s stead are only as deep as the statutory damages cap, which, in this case, is not very deep at all. Consequently, there is no “this for that” exchange in evidence here. Plaintiff’s common-law remedy against Officer Boyle has been abolished, and the remedy that has been left to her is insufficient to restore her injured rights as determined by the jury. She has not, contrary to the position taken by the majority, “been conferred a substantial benefit in exchange for the damage limitation.” In positing otherwise, the majority is simply wrong.
In any event, the majority takes Hale’s “quid pro quo” rationale far beyond its application in that case. In Hale, the court did not hold that the legislative damage limitation at issue before it was constitutional based on a determination that the remedy was “substantial.” Instead, the court reasoned, in part, that the legislature had conferred a benefit to a “class of plaintiffs” to which the plaintiff belonged in exchange for imposing a “counterbalancing burden.” In that trade-off, the court noted, the legislature had capped previously unlimited municipal liability for torts arising out ofproprietary functions in exchange for partially waiving what had been complete municipal immunity for torts arising out of governmental functions. That legislative scheme, the court wrote “may work to the disadvantage of some, while it will work to the advantage of others. But all who had a remedy continue to have one.” 308 Or at 523. That legislative scheme did not prevent any plaintiff from *401 seeking damages from the individual municipal employees who caused their injuries.
The majority, however, assumes that, if the legislature has provided any sort of remedy with regard to municipal torts, that fact makes subsequent legislative limitations constitutional, even when the substituted remedy prevents a plaintiff from obtaining a full recovery from anyone. In that regard, the majority’s position begs the question of what constitutes a constitutionally adequate remedy. Must the quid pro quo fairly trade “counterbalancing” benefits for burdens, or can the legislature satisfy the constitution by providing any benefit at all? If a balanced trade between burdens and benefits is required, then a quid pro quo results only when a plaintiff receives a remedy that is substantially equivalent to the one that has been taken away — and which would, presumably, be capable of restoring the right that was injured. If, however, a quid pro quo need not be substantially equivalent to the remedy taken away, then what relationship, if any, must it bear to the common-law remedy? If the Remedy Clause requires only a “substantial” remedy, then presumably a “substantial” quid pro quo — whatever that is — is all that is required. But if the Remedy Clause requires a restorative remedy, then a quid pro quo will be satisfactory only to the extent that the benefit it confers is restorative as well. I fail to see the utility of that tautological digression.
But, as I have already noted, there is no quid pro quo at play here. For torts arising out of governmental functions, plaintiffs had access to municipal “deep pockets” by virtue of the preexisting statutory waiver of municipal immunity. The 1991 OTCA amendments eliminated individual municipal employee liability without conferring any additional benefit to injured plaintiffs. The majority ignores that fact in favor of permitting the preexisting statutory waiver of municipal immunity to serve as a quid pro quo for the later, additional deprivation of individual municipal employee liability. According to the majority’s interpretation of Hale, however, that benefit has already been “spent” to justify the cap on municipal liability for proprietary functions. If that supposed “benefit” is also the acceptable *402 trade-off for the remedy plaintiff has been deprived of in this case, then that “benefit” is capable of justifying virtually any future reduction in the remedies available to plaintiffs injured by the acts of a public body. That, in my view, is not an equitable exchange.
III. HISTORY AND THE LEGISLATURE’S AUTHORITY UNDER OREGON’S REMEDY CLAUSE
The majority acknowledges that the Remedy Clause requires the restoration of a right that has been injured, and asserts that what must be “restored” is an “injury that would have been recognized as the basis for a cause of action in 1857.” 353 Or at 381 (emphasis in original). The majority then relies on a historical analysis of the contributory negligence doctrine as practiced in the nineteenth century for its conclusion that, even if I am correct that the Remedy Clause mandates a restorative remedy, this plaintiff “would have been entitled to recover nothing” in 1857. 353 Or at 385. The majority’s position is that, from a historical perspective, (1) contributory negligence was, at one time, an absolute bar to a plaintiff’s recovery in tort, and (2) establishing the absence of contributory negligence was part of a plaintiff’s burden of proof. Therefore, the majority concludes that,
“under the prevailing law at the time that the state’s constitution was adopted, a plaintiff was required to prove not only that his or her injuries were caused by a defendant’s negligence but also that his or her own actions did not contribute to those injuries. Contributory negligence, in other words, was a principle of causation that constituted a part of plaintiff’s burden of proof.”
353 Or at 382.
There are, of course, multiple pitfalls associated with the kind of historical analysis that the majority undertakes. As Justice Landau has cautioned:
“Historical analysis, even done well, often will fail to establish with anything approximating probability what the framers of a constitutional provision intended. It may even show that there were multiple and conflicting intentions. Judges should be prepared to accept that and not try to make history tell us more than it fairly does.”
*403 Jack L. Landau, A Judge’s Perspective on the Use and Misuse of History in State Constitutional Interpretation, 38 Val U L Rev 451, 486-87 (2004).
That warning is appropriate here. As the majority acknowledges, when the Oregon Constitution was adopted, this court had not decided that contributory negligence was a bar to a plaintiffs claim or that a plaintiff was required to plead a lack of contributory negligence as an affirmative element of his or her cause of action. The first Oregon case to discuss those issues was decided in 1870, and by 1885 the court had made clear that it had “always understood” contributory negligence to be a defense that a defendant must plead. Grant v. Baker, 12 Or 329, 333 (1885); see also Johnston v. Oregon Short Line & U.N. Ry. Co., 23 Or 94, 99, 31 P 283 (1892) (discussing contrary position set out in Walsh as a “lapsus linguae” (a slip or fault of the tongue)).[8] Thus, the majority cannot say, with the certainty that should be required for a decision of this magnitude, that, in 1857, plaintiff would not have had a cause of action for her injuries.
*404 Furthermore, even if defendant could have made arguments in 1857 that had the potential to defeat plaintiff’s claim had she filed it in 1857 rather than in 2007, plaintiff also could have raised legal rules, such as last clear chance or that defendant had acted with gross negligence— rules that could have defeated defendant’s contributory negligence arguments. The majority declines to address the theoretical or practical significance of those rules because, according to the majority, plaintiff failed to preserve below arguments regarding those rules. That is true, but it is unsurprising: As noted, contributory negligence ceased to be a part of Oregon law decades ago and plaintiff therefore had no obligation to plead claims in reply to that nonexistent doctrine. It is fundamentally unfair for the majority to consider how plaintiff’s claim theoretically would have fared in 1857 based only on arguments that a defendant could have made and at the time refuse to consider, on preservation grounds, the counter arguments that a plaintiff could have made.
In any event, regardless of who has the better argument about Oregon’s legal history, because the Oregon legislature abolished the contributory negligence doctrine decades ago, it was not part of the “due course of law” that governed plaintiff’s right to a remedy at the time of her injury. Relying on Smothers, however, the majority, nevertheless insists that the legislature constitutionally may deprive a plaintiff of a remedy that otherwise would be guaranteed to her if a court is able to determine that the plaintiff’s negligence contributed to her injury. Smothers does not stand for such a strained proposition. Article I, section 10, guarantees a restorative remedy for injury done to one’s person; it does not mention, let alone freeze in place, every repealed, overruled or outmoded argument that a defendant might have relied on in 1857 to resist an injured person’s claim.
Finally, I take issue with the majority’s resolution of this matter for its lack of any guiding principle capable of aiding both bench and bar in future Remedy Clause cases. Will the requirement that a remedy be “substantial” and *405 that it provide a “quid pro quo” prohibit the legislature from limiting all plaintiffs to a recovery of $200,000 regardless of injury? What about $20,000? $2,000?[9] Will a limitation to 25 *406 percent of the damages awarded by a jury be deemed constitutionally sound? Ten percent? Five percent? The majority does not say, and the lack of analytical rigor in its discussion does not help answer the question. The only limitations suggested by the majority’s opinion are that (1) plaintiffs cannot be left “wholly without a remedy,” or without recourse of any value whatsoever, and — in what is essentially the same proposition stated differently — that (2) some benefit must be conferred as a “quid pro quo” in exchange for the remedy taken away, regardless of the quantity, quality, or substance of the new benefit conferred. Those propositions, however, are as applicable to a remedy of $10 as they are to a remedy of $10,000,000 and will ultimately prove unhelpful in future cases.
In my view, there are no plausible arguments for holding that the Remedy Clause can be satisfied by a remedy that is not capable of restoring a plaintiff’s injured rights and, even if there were, there are no principled bases upon which a court could find the remedy in this case to be “substantial” — unless, of course, every remedy short of no remedy at all is, indeed, “substantial.” Here, because the constitution plainly requires that plaintiff have a fully *407 restorative remedy and because the legislative limitation on that remedy is so patently insufficient to serve that purpose, I cannot join the majority in upholding its constitutionality.
I respectfully dissent.
Walters, J., and Durham, Justice, pro tempore, join in this dissent.

 The Remedy Clause affords plaintiff, and every person in this state, the right to a remedy by due course of law for personal injuries. The analysis of that right set out in our cases, and discussed in this dissent, does not differentiate between economic or noneconomic damages. As a matter of both history and logic, both kinds of damages comprise the remedy that is reasonably calculated, so far as possible, to restore or repair the right that defendant injured. I draw particular attention to the effect of the majority’s holding on plaintiff’s right to recover her economic injuries for only one reason. Plaintiff’s economic damages reflect her out-of-pocket expenses, such as for medical bills, that is the result of defendant’s conduct. Assuming that causal link, the calculation of plaintiff’s economic damages requires only simple arithmetic and includes no evaluation by a factfinder of plaintiff’s mental or emotional injuries, such as her pain and suffering. Thus, in focusing momentarily on the topic of plaintiff’s economic damages, we perhaps can see the majority’s error in clearest relief. According to the majority, Article I, section 10, does not guarantee plaintiff a right to recover a remedy reflecting even the amount of plaintiff’s monetary expenses, including her medical bills, directly attributable to defendant’s conduct. As this dissent demonstrates, the majority’s novel interpretation of Article I, section 10, departs sharply from our case law and deprives the constitutional guarantee of a remedy by due course of law of any practical meaning.

 This case does not call upon us to consider — and the majority has not considered — the constitutionality of the trial court’s action or that of the legislature under Article I, section 17, of the Oregon Constitution. That provision prohibits interference with the jury’s assessment of damages in a common-law negligence action like this one. Lakin v. Senco Products, Inc., 329 Or 62, 987 P2d 463 (1999).

 Even at that time, the basis for that holding was neither new nor novel. In Caviness v. City of Vale, 86 Or 554, 562-63, 169 P 95 (1917) — decided over 20 years before — the court had recognized, as well-settled, the rule that
“before a city can exempt itself from a liability which exists both at common law and by virtue of our Constitution, it must provide an equivalent remedy; one reasonably adequate to serve the purpose of the one taken away”
(Emphasis added.)

 That similarity was not lost on Justice Hans Linde who, concurring in Hale, wrote:
“There is nothing intrinsically absurd in the idea that although statutory and common law remedies may be changed, they must maintain some comparable degree of protection for those interests to which Article I, section 10, refers.”
Hale, 308 Or at 529 (Linde, J., concurring). Later in his concurrence, Justice Linde observed that
“the court has allowed legislative immunization of cities from tort liability only on condition that the individuals who are personally responsible for harm qualifying as a legal injury remain liable. This is analogous to altering or limiting the scope of respondeat superior rather than wholly depriving a plaintiff of a remedy in due course of law for harm that no one has declared not to be a legal injury when caused by public rather than private negligence. Because this case presents no claim against individual public ‘officers or employees, or agents,’ ORS 30.265,1 concur with the court.”
Id. at 530 (internal citations omitted).

 Greist is no longer good law on a number of different fronts. In 1999, the court decided Lakin v. Senco Products, Inc., 329 Or 62, and held that the statute at issue Greist — ORS 18.560 — violated the Oregon Constitution’s civil jury trial guarantee. In 2002, the court decided Storm v. McClung, 334 Or 210, 47 P3d 476 (2002), and concluded that Article I, section 10, applied only to injuries for which a cause of action existed in 1857, effectively placing the statutorily created wrongful death action at issue in Greist beyond the ambit of that constitutional provision. Consequently, much of Greist is no longer substantively applicable as a matter of Oregon law. That said, as we acknowledged in Clarke v. OHSU, 343 Or 581, 605, 175 P3d 418 (2007), Greist remains capable of providing a degree of guidance concerning the implementation of statutory damage caps, a position that this dissent reiterates today.

 As I have already noted, this court’s decision in Storm v. McClung clarified that the Remedy Clause applies only to common-law claims, and not to claims created by statute, like those for wrongful death. Consequently, Neher is, like Greist, of little substantive value beyond the guidance we are able to draw from it here as we did in Clarke.

 Known generally as “denying the antecedent,” that error in thinking is usually illustrated by this example: If P, then Q. Not P. Therefore, not Q.

 The majority cites Conroy v. Oregon Constr. Co. 23 F 71, 72 (D Or 1885), and Charles Fisk Beach, Jr.’s 1885 treatise on contributory negligence in support of its claim that Walsh establishes that, at the time the constitution was adopted, a plaintiff needed to prove the exercise of ordinary care as part of the plaintiff’s casein-chief. The majority correctly notes that Judge Deady observed in Conroy that, at least in 1885, the states were “nearly evenly divided on the question whether ‘contributory negligence’ is a part of the plaintiff’s case or a matter of defense.” And with regard to Oregon, Judge Deady also observed that the Walsh case indicated that plaintiff had the burden to prove the plaintiff’s absence of negligence. I would note, however, that in doing so Judge Deady appeared skeptical of the rule, pointing out that “[t]he law does not presume that anyone is negligent; especially when such negligence may or will result in his own personal injury.” 23 F at 72. Moreover, Judge Deady characterized the court’s reference to the rule stated in Walsh as “a dictum to that effect.” Id. at 72. Judge Deady’s observations are consistent with Oregon statutory law at the time the constitution was adopted. At that time, with regard to civil matters, there was a presumption that, “a person takes ordinary care of his own concerns.” General Laws of Oregon, Civil Code, ch VIII, title VII, § 766, p 337 (Deady 1845-1864). With regard to the Beach treatise, I would point out that in the third edition of the treatise in 1899 Beach still recognized Walsh as controlling almost 15 years after that was clearly no longer the case. See Charles Fisk Beach, Jr., A Treatise on the Law of Contributory Negligence § 422, 599-601 (3rd ed 1899) (listing Oregon as one of the states requiring a plaintiff to prove the absence of his own negligence). All I claim for these notations is to emphasize that determining the exact state of Oregon law over 150 years ago is an exceeding difficult undertaking.

 Since this court’s decision in Clarke and the trial court decision in this case, the legislature has increased the damages caps. The majority gives the legislature no guidance for the future about whether its damage caps will meet constitutional muster in individual cases. As pertinent here for claims against public bodies, ORS 30.272 now provides:
“(1) The limitations imposed by this section apply to claims that:
“(a) Are subject to ORS 30.260 to 30.300;
“(b) Are made against a local public body, or against an officer, employee or agent of a local public body acting within the person’s scope of employment or duties;
“(c) Arise out of a single accident or occurrence; and
“(d) Are not claims for damage to or destruction of property.
“(2) The liability of a local public body, and the liability of the public body’s officers, employees and agents acting within the scope of their employment or duties, to any single claimant for claims described in subsection (1) of this section may not exceed:
“(a) $500,000, for causes of action arising on or after July 1, 2009, and before July 1, 2010.
“(b) $533,300, for causes of action arising on or after July 1, 2010, and before July 1, 2011.
“(c) $566,700, for causes of action arising on or after July 1, 2011, and before July 1,2012.
“(d) $600,000, for causes of action arising on or after July 1, 2012, and before July 1, 2013.
“(e) $633,300, for causes of action arising on or after July 1, 2013, and before July 1,2014.
“(f) $666,700, for causes of action arising on or after July 1, 2014, and before July 1,2015.
“(g) The adjusted limitation provided by subsection (4) of this section, for causes of action arising on or after July 1, 2015.
“(3) The liability of a local public body, and the liability of the public body’s officers, employees and agents acting within the scope of their employment or duties, to all claimants for claims described in subsection (1) of this section may not exceed:
“(a) $1 million, for causes of action arising on or after July 1, 2009, and before July 1, 2010.
“(b) $1,066,700, for causes of action arising on or after July 1, 2010, and before July 1, 2011.
“(c) $1,133,300, for causes of action arising on or after July 1, 2011, and before July 1, 2012.
“(d) $1,200,000, for causes of action arising on or after July 1, 2012, and before July 1, 2013.
“(e) $1,266,700, for causes of action arising on or after July 1, 2013, and before July 1, 2014.
*406 “(f) $1,333,300, for causes of action arising on or after July 1, 2014, and before July 1,2015.
“(g) The adjusted limitation provided by subsection (4) of this section, for causes of action arising on or after July 1, 2015.
“(4) Beginning in 2015, and every year thereafter, the State Court Administrator shall determine the percentage increase or decrease in the cost of living for the previous calendar year, based on changes in the Portland-Salem, OR-WA Consumer Price Index for All Urban Consumers for All Items as published by the Bureau of Labor Statistics of the United States Department of Labor. On or before July 1 of the year in which the State Court Administrator makes the determination required by this subsection, the State Court Administrator shall adjust the limitations imposed under subsections (2) and (3) of this section for the following calendar year by multiplying the limitation amounts applicable to the calendar year in which the adjustment is made by the percentage amount determined under this subsection. The adjustment may not exceed three percent for any year. The State Court Administrator shall round the adjusted limitation amount to the nearest $100, but the unrounded amount shall be used to calculate the adjustments to the limitations in subsequent calendar years. The adjusted limitation becomes effective on July 1 of the year in which the adjustment is made, and applies to all causes of action arising on or after July 1 of that year and before July 1 of the subsequent year.
“(5) The limitations imposed by this section do not apply to claims against Oregon Health and Science University.”